**CAMPBELL et al. v. BREECE.**

No. 18072.   Opinion Filed May 1, 1928.

Rehearing Denied Jan. 8, 1929.

Rittenhouse, Lee, Webster & Rittenhouse and Shirk, Danner & Mills, for plaintiffs in error.

Gomer Smith and Thos. J. McCaffrey, for defendant in error.

JEFFREY, C.   This action was commenced by Lottie Breece, as plaintiff, against A. O. Campbell and W. E. Price, copartners, engaged in business as Campbell & Price. defendants, for damages for the wrongful death of her husband, John Henry Breece, alleged to have been caused by the negligence of said defendants on the 1st day of December, 1924.   The petition alleged that the defendants were general construction contractors, and were at the time engaged in the construction of an eight-story building in the city of Oklahoma City, and known as the Kerr building.   Plaintiff further alleged that deceased was employed at the time of his death, and for a considerable period

prior thereto, by the defendants as a laborer on said building; that the defendants caused to be erected on the east side of said building an elevator tower, and placed therein an elevator operated by steam power for the purpose of carrying materials to the various floors of the building; that at the time deceased met his death, the entire east side of said building had been inclosed except one window on each floor which opened into the elevator shaft, and kept open for the purpose of passing materials from said elevator onto the various floors, and from the floors to the elevator; that neither the elevator nor the shaft was equipped with signals to inform the employees when the elevator was moved up and down, but that only an electric button was placed on each floor for the purpose of signaling for the elevator; and that by pressing said button a bell would ring in the basement where the engineer was stationed, and no other place; that on the date Breece met his death, he was instructed by his foreman, Mr. Armstrong, to go to the fourth floor, fill some water barrels with a hose provided for that purpose, and then put the hose on the third floor; that in order to take the water hose from the fourth floor to the third floor, it was necessary to extend it out the window of the fourth floor down the elevator shaft, and have it pulled in through the window on the third floor by some one stationed thereat. Plaintiff further alleged that at the time the foreman gave the above instructions to the deceased, the foreman stated that he would cause the elevator to be held until deceased's work was completed; but that while deceased was leaning out the window of the fourth floor, and extending the hose down the elevator shaft, the defendant, through its agent and employee, caused the elevator to descend from a higher floor without warning and crushed deceased's head, producing his death. Plaintiff further alleged that upon the death of her husband, he left surviving, plaintiff, his widow, and four minor children, all of whom were dependent upon deceased for a livelihood; that no administrator of his estate had been appointed, and that plaintiff prosecuted the action for the use and benefit of herself and minor children above named—and asked for compensatory damages in the sum of $75,000, and punitive damages in the sum of $50,000. Defendants filed an answer in the form of a general denial, and further pleaded contributory negligence and assumption of risk.

The cause was tried to a jury, and a verdict returned in favor of plaintiff for the sum of $22,500. From this judgment defendants have appealed.

The first assignment of error presented is that the court erred in overruling the motion of plaintiff in error for a new trial. Under this assignment the evidence is summarized, and while it is admitted that there is a conflict in the evidence on the material issues in the case, it is insisted that the weight of all testimony greatly preponderates in favor of defendants. This was a proper question for the jury to determine. The jury having passed upon the weight of the evidence, the credibility of the witnesses, and rendered a verdict in favor of plaintiff, that question is foreclosed in this court. Muskogee Electric Traction Co. v. Rye, 38 Okla. 93, 132 Pac. 336; Muskogee Electric Traction Co. v. Cooper, 79 Okla. 271, 193 Pac. 39; Kiser v. Nichols, 35 Okla. 8, 128 Pac. 103; C., R. I. & P. Ry. Co. v. Brazzell, 40 Okla. 460, 138 Pac. 794.

Under the above assignment of error, it is argued that the trial court erred in refusing to grant a new trial on the ground of newly discovered evidence. In the trial of the cause three or four witnesses testified, on behalf of plaintiff, that they ate their noon lunch on the first floor of the building on December 1, 1924; that the white employees and the negro employees, who happened to be in that vicinity of the building, ate lunch on the first floor together; that during the noon hour, and just before time to begin work, they heard Mr. Armstrong, the foreman, tell deceased to go to the fourth floor, fill the water barrels, return the hose by way of the window to the third floor, and that he would hold the elevator until this work was done. After the trial of the cause, defendants secured an affidavit from one Sam Heath, to the effect that he was an intimate friend of deceased; and that on the day that deceased met his death, he, affiant, ate lunch with deceased in the alley in the rear of the Kerr building, and did not go back to the building until 12:30, when it was time to go to work.

Newly discovered evidence, such as will entitle one to a new trial, should meet the following requirements: (1) It must be such as will probably change the result if a new trial be granted; (2) it must have been discovered since the trial; (3) it must be such that it could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be to merely impeach or contradict the former

evidence. City of Sapulpa v. Deason, 81 Okla. 51, 196 Pac. 544. The particular issue, to which the evidence incorporated in the affidavit is most closely related, is whether or not Armstrong gave the particular orders to the deceased, in the performance of which he was killed. Some of the witnesses stated that deceased ate his lunch on the first floor where his orders were given him. Would the fact that deceased ate his lunch in the alley instead of in the building be material to this issue? We think not. It would make no difference where he ate his lunch in so far as this issue is concerned.

The foreman, Armstrong, testified, and while he denied that he told deceased to fill the water barrels on the fourth floor, and also denied that he assured deceased that he would hold the elevator, he admitted that he directed deceased to take the hose on the third floor and wet down the dirt, and that these orders were given between 12 o'clock and 12:30 on the first floor of the building. So it is admitted that deceased was on the first floor at some time during the noon hour when he received his orders for the afternoon, and where he ate his lunch would not even tend to contradict the giving of the orders. In fact, one or two witnesses, who testified to the giving of the orders, did not say that deceased ate his lunch on the first floor that day. It is argued that if deceased ate his lunch in the alley, and did not enter the building until 12:30, when it was time to go to work, as shown by the affidavit, the witnesses could not have heard the foreman giving the orders at the time and place testified to. Armstrong also testified that he also directed two of the witnesses, who testified to the giving of the orders, to assist deceased. He said that he gave the orders to witnesses during the noon hour, and could not say whether they and deceased were together at that time or not. Another witness testified for defendant that Armstrong gave him, deceased, and another witness orders to go to the third floor and clean up; and that such orders were given the three on the first floor, and they immediately went up the stairs. Neither can we agree that such evidence would probably change the result if a new trial were granted, especially since the testimony that the whites and negroes ate lunch together was contradicted at the trial. The only other purpose the newly discovered evidence could serve would be to merely impeach or contradict the evidence of the witnesses, to the effect that deceased ate his lunch on the first floor of the building on that day. This qualification

alone is not sufficient to justify the granting of a new trial.

It is next contended that the trial court erred in admitting incompetent, irrelevant, immaterial, and prejudicial testimony on behalf of plaintiff over the objections of the defendants. The particular question and answer complained of was during the examination in chief of the witness, Elrod, as follows:

"Q. Were you working on that building on December 4th, when a man by the name of John Casten got his arm caught in the same hoist? A. No, sir."

This is the only examination in the record pertaining to a subsequent injury in so far as we are able to ascertain. Whether evidence of another injury at a time not remote from the one in question would be admissible certainly depends upon several conditions. And since the examination went no further on the subject, we do not feel called upon to discuss further this phase of the objection. It is argued by counsel for defendants that the witness was permitted to testify that on December 4th, John Casten got his arm caught in the hoist. We do not so construe the testimony. The question asked by counsel is the only information, if it may be such, of an injury on the 4th of December. We cannot see how this question and answer alone could, in any wise, prejudice the jury against defendant, and certainly it could not be said to be such an error as would work a reversal of the cause.

It is next contended that the court erred in refusing to give defendants' requested instruction No. 4. That instruction is as follows:

"The court instructs you that it was not required of the defendants to install upon the elevator shaft or tower, or in close proximity thereto, warning or signal bells, and their furnishing such bells or their lack of furnishing such bells is not an issue in this case, and you will, therefore, disregard the allegations in plaintiff's petition in reference to the bells or warnings."

One of the principal issues in the case was whether or not bells or other signals were attached to the elevator or the elevator shaft to warn employees of the movement of the elevator. Several witnesses for plaintiff testified that up to the date of the injury in question, the elevator shaft was not equipped with bells for this purpose. A number of witnesses for defendants testified that the elevator shaft was equipped with three bells, one at the ground floor, another even with the fourth floor, and a third near the top

of the shaft, which rang every time one pressed an elevator button on any of the floors. Section 7269, C. O. S. 1921, provides that all scaffold, hoists, cranes, stays, ladders, supports or other mechanical contrivances erected or constructed for the use in the erection of any building shall be constructed in a safe, suitable and proper manner and shall be constructed and operated so as to give proper and adequate protection to life and limb to any person employed or engaged thereon. However, at common law a master is bound to exercise reasonable care and diligence to provide his servants with a reasonably safe place within which to work, with reasonably safe machinery, tools and implements with which to work, and with reasonably safe materials upon which to work. It may have been that defendant's duty to deceased did not require the installation of bells on the elevator shaft for signaling purposes. The law merely requires that defendants use ordinary care to furnish their employees with a reasonably safe place in which to perform their duties. If deceased's work brought him into a place of danger from the movement of the elevator, it became the duty of the defendants to use ordinary care to avoid injuring him, and that duty included the giving of reasonable and timely warning of the movement of the elevator, whether it be by the use of bells or in some other manner. As to what constitutes ordinary care as a matter of law, the jury was properly instructed. As to whether facts constituting the exercise of ordinary care exist in a given case is a question of fact to be determined by the jury. The same is true with reference to whether a particular place has been made a reasonably safe place in which to work. It is a question of fact to be determined by the jury in each case in the light of all the facts and circumstances under proper instructions. As to whether the absence of bells or other signaling device on the elevator or shaft, as shown by plaintiff's evidence, constitutes a want of ordinary care on the part of defendants under the circumstances of the case, is a question of fact for the jury. There was sufficient evidence tending to establish negligence in failing to equip the elevator or shaft with some kind of signals, to justify submitting this issue to the jury. To have given such instruction would have interfered with the jury's determination of a question particularly within the jury's province. It was not error to refuse to give said instruction.

It is next contended that the trial court

erred in refusing to give defendants' requested instruction No. 6. The first part of that instruction recites that unless the jury should find from a preponderance of the evidence in the case, that Armstrong, the foreman, promised deceased that he would hold the material elevator and would not permit the same to be moved while deceased was doing his work on the fourth floor, then a verdict should be returned for the defendants. The latter part of the instruction recites that even though the jury should find from a preponderance of the evidence that the foreman made such promise, yet, if said elevator was in constant use during the time the deceased was working on the fourth floor and the deceased knew that said elevator was in operation during said time, then the dangers incident to said elevator were so obvious and apparent that deceased could not rely upon the promise made by the foreman, and that the verdict should be for the defendant. The first part of the instruction referred to is erroneous as applied to the facts in the case. Plaintiff did not rely for recovery solely on the promise of the foreman to hold the elevator, while deceased was performing the duties required of him, but also pleaded and offered evidence that defendants did not use ordinary care in providing deceased with a reasonably safe place in which to perform his work. The giving of this portion of the instruction would have excluded from the jury the question of whether defendants used ordinary care in providing a reasonably safe place in which to work, and whether or not this was the proximate cause of the death, just as effectively as the giving of requested instruction No. 4, hereinabove considered. Under an established rule of this court, since a portion of this instruction incorrectly states the law of the case, regardless of what was contained in the latter part of the instruction, it was not error for the court to refuse it. In order to entitle one to present error in this court, by reason of the trial court having refused to give a requested instruction, such instruction must be correct both in form and substance, and such that the court may give to the jury without change, modification or omission. Town of Quapaw v. Holden, 96 Okla. 281, 222 Pac. 680; Muskogee Electric Traction Co. v. Thompson, 100 Okla. 169, 228 Pac. 963. In addition to this, the latter part of the instruction offered was given in substance in the court's instruction No. 18. It was not error for the court to refuse requested instruction No. 6.

The refusal of the trial court to give

defendants' requested instruction No. 7 is assigned as error. Instruction No. 7 is as follows:

"You are further instructed that the defendants are not bound to guard against obvious and apparent dangers, and that an employee working upon or about a dangerous instrumentality or machinery, such as the material elevator in this case, is bound to know and appreciate the dangers incident thereto."

There are several reasons why it was not error to refuse this instruction. In the first place, section 7269, C. O. S. 1921, provides that a hoist, as the one in question, shall be so erected, constructed and operated as to give proper and adequate protection to life and limb of any person employed or engaged thereon, or passing under or by the same. Certainly, defendants were bound to use ordinary care in constructing and operating the elevator in question so as to give proper and adequate protection to the employees, and to make it a reasonably safe place to work, taking in consideration the usual, hazard and danger incident to the operation of or working about an elevator of this character. Neither do we think it a correct statement of the law to say that deceased was bound to know and appreciate the dangers incident to working upon or about the elevator in question. One is usually held to assume the risk and perils ordinarily incident to their employment, but one could not be said to know or assume all the dangers incident to the operation of such a hoist, and especially those dangerous conditions which the master could prevent or avoid by the use of ordinary care. The only guide that the court should have given as to whether deceased had assumed the risk is whether or not deceased knew of the danger in which he had placed himself, or as an ordinarily prudent person should have known. In addition to the above reasons, it appears that no exception to the refusal of this instruction was preserved. It was not error to refuse said instruction. Chickasaw Compress Co. v. Bow, 47 Okla. 576, 149 Pac. 1166.

The refusal to give defendants' requested instruction No. 12 is assigned as error. It is admitted that the substance of this instruction is incorporated in the court's instruction No. 17, but counsel say that it is so interwoven with foreign matter, and so garbled, as to destroy the force and effect of it. An examination of the two instructions discloses that the requested instruction was given almost in the exact words presented, but the court very properly made the instruction more full and complete by adding additional language thereto. No complaint is made that the additional matter included is not a correct statement of the law. Counsel have no control over the exact language, nor the sequence and order employed in presenting the court's instructions to the jury. Even though a correct instruction is presented, the court is not required to give it in the exact language presented, nor in the order desired. The court may choose its own language and form, provided it correctly states the principles of law requested in language and form so that persons of ordinary understanding can comprehend the full meaning thereof, Vesley v. Engelkemeier, 10 Okla. 290, 61 Pac. 924.

The giving of instruction No. 13 is assigned as error. Instruction No. 13 is as follows:

"You are further instructed that if you find and believe from a preponderance of the evidence that the work which the deceased was doing at the time of his death brought him into a place of danger from the movement of the elevator, then, it was the duty of the master to exercise ordinary care to avoid injuring him, and that duty included giving him reasonable and timely warning of the movement of the elevator."

"If you believe from a preponderance of the evidence that the defendants failed to observe any one or more of these duties, and that by reason of that failure, the elevator or hoist struck the deceased and killed him, then, your verdict will be in favor of the plaintiff and against the defendants."

It is contended that this instruction assumes a state of facts not in evidence. In other words, counsel for defendants say there was no evidence tending to prove that the duty given the deceased reasonably required him to expose his body to the hoist. The evidence discloses that the elevator shaft was constructed about 18 inches from the wall of the building; that each floor was connected with the shaft through the window by means of a runway or board which protruded out each window to within about two or three inches of the shaft. The evidence is reasonably clear that the water hose had been extended from the third floor, where there was a water connection, out the window up along the wall between the shaft and the wall through the window on the fourth floor. The only evidence tending to show why deceased placed himself in position to be struck by the elevator was by several witnesses who testified that the foreman told him to lower the hose by way of the window, and that the elevator would be held while he was doing so. From

the foreman's direction to lower the hose, and his assurance that the elevator would not be moved while this work was being done, a reasonable inference may be drawn that it was necessary for deceased to place himself dangerously near the elevator to lower the hose. And another witness testified that it was necessary for one in lowering the hose to lean out the window in order to get the hose to go down without hanging. What other obstructions there might have been between the shaft and the wall of the building, other than the runway, for the hose to hang on, is not shown by the evidence, but the evidence that it was necessary to lean out the window to get the hose to go down, and the further evidence that the foreman had assured deceased that he would hold the elevator while this work was being done, we think, is sufficient to justify the instruction complained of. Counsel also say that the court should have, in connection with this instruction, given an instruction on contributory negligence. An adequate instruction was given on contributory negligence, and it was not necessary to again instruct on that question in connection with this instruction.

The giving of instruction No. 18 is assigned as error. Only a portion of the instruction is set out in the brief; and that part instructs the jury, in substance, that even though they find from a preponderance of the evidence that Armstrong promised deceased that he would hold the elevator, yet, if the elevator was actually in constant use during the time that deceased was working on the fourth floor, and this was known to deceased, and the deceased nevertheless proceeded to place himself in a position of danger from said elevator, the defendants could not be held responsible by reason of the foreman's assurance that he would hold same. The complaint is that this instruction is not a full and complete statement of the law relative to the care which deceased was required to exercise for his own safety under such circumstances. It is contended that the instruction places upon defendants the burden of proving that deceased knew that the elevator was not being held, while, as a matter of law, deceased was charged with knowledge of such risks and dangers as were apparent and obvious, and that an ordinarily prudent and careful person would have observed under the circumstances. This phase of the law is fairly well stated in the court's instruction No. 17, it being that part of the instruction which defendants complained of as being foreign matter. But, aside from this, defendants have not so presented the question as to secure a reversal on this point. If the defect complained of constitutes an error, it is one of nondirection instead of misdirection. The instruction, in so far as it goes, is correct. If there was sufficient evidence to justify an instruction along the line suggested by defendants, a proper and timely request should have been made to the trial court. We find no such request in the record, and by reason thereof no error is presented. St. L. & S. F. Ry. Co. v. Crowell, 33 Okla. 773, 127 Pac. 1063; Lusk v. Kennedy, 73 Okla. 307, 176 Pac. 502.

It is contended that the trial court erred in refusing to discharge the jury upon motion of defendants on account of prejudicial misconduct of plaintiff, which prevented defendants from having a fair and impartial trial. While plaintiff was testifying as a witness, her counsel asked what, if anything, was wrong with her eyes. This was objected to, and the objection was sustained by the court. Then counsel for plaintiff made the following inquiry of the court:

"If she was nearly blind and was unable to work, wouldn't that have some bearing on her measure of damages?"

Thereupon counsel for defendants objected, and asked that the jury be instructed to disregard what was said by counsel for plaintiff. Before this objection and request were passed upon, counsel for defendant made a motion to discharge the jury for the reason that counsel for plaintiff had deliberately made, in the presence of the jury, a statement highly prejudicial to the rights of the defense and such as disqualified the jury to give the defendants a fair and impartial trial. This motion was overruled, and then the court instructed the jury to disregard the statement made by counsel which referred to the condition of plaintiff as not being evidence in the case. It is contended that the action of the court in sustaining the objection, and admonishing the jury not to consider the statement made, was too mild, and not a sufficient antidote to remove the poison of the prejudicial statement. The inquiry in the presence of the jury was improper. That it was deliberately made for the purpose of prejudicing the jury, we are unable to determine. However, it would seem that the court made it clear to the jury that such remarks did not constitute evidence, and should not be regarded by the jury. Usually, where the court directs the jury to disregard remarks or improper statements made in the course of trial, it will be presumed that the jury obeyed the direction. And especially is this true, if the

evidence warranted the findings and verdict which was returned, and it does not appear from the record that the jury was influenced by the remark. El Paso Electric Ry. Co. v. Terrazas (Tex. Civ. App.) 208 S. W. 387; Ft. Smith L. & T. Co. v. Hendrickson (Ark.) 189 S. W. 1065; Brown v. Perez (Tex.) 34 S. W. 725.

We hardly think the inquiry should be classed as an emphatic statement of fact. The trial court was in better position to determine whether the inquiry produced an injurious effect in the minds of the jurors, than we are from an examination of the record. He must have felt that they were not influenced thereby, or else he would have discharged the jury as requested, or later sustained defendant's motion for a new trial. We are of the opinion that the court properly admonished the jury regarding this statement, and that the defendants were not prejudiced thereby.

The next assignment of error is that the verdict and judgment are not sustained by sufficient evidence, and are contrary to law. Under this assignment of error, it is stated that 22 credible witnesses testified positively about the things they were in position to know as against one witness who was impeached, and three others who were utterly discredited; and that the verdict is not sustained by any credible testimony, and is against the great weight of all testimony. As to the credibility of the witnesses, the jury were the sole judges. Whether the verdict is against the great weight of all the testimony, we do not undertake to determine, for the reason that this court will not undertake to weigh conflicting testimony in actions at law to determine where the weight lies. Chickasha St. Ry. Co. v. Wund, 37 Okla. 582, 132 Pac. 1078. Several authorities are cited to the effect that where the record shows that the negligence complained of is not the proximate cause of the injury, no recovery can be based thereon. There certainly must be established a causal connection between the alleged negligence and the injury complained of, in order to establish actionable negligence. In view of the evidence in this case, we cannot see the application of such authorities. The evidence, upon which the verdict is based, is that the foreman directed deceased to do certain things, one of which was to lower the water hose from the fourth floor to the third floor, and assured him that he would cause the elevator to be held while this operation was being performed; and that in violation of this promise, the elevator was caused to descend and strike deceased upon the head. In addition to this, plaintiff's evidence showed that there were no bells or signals of any kind upon the elevator, or the elevator shaft, by which persons employed nearby the elevator would be warned of the movement of the elevator. That this evidence was sufficient to require the case to be submitted to the jury on the question of primary negligence should not be debatable. It is also argued that the evidence shows conclusively that deceased assumed the risk of being struck by the elevator, and further that deceased contributed to his own death by his negligence. By reason of section 6, article 23, of the Constitution of Oklahoma, both these questions are questions of fact, and must be left to the jury in all cases for a determination under proper instructions.

Lastly, it is contended that the verdict is contrary to and in disregard of the court's instructions to the jury. Having heretofore discussed at considerable length the question of the sufficiency of the evidence, the law of assumption of risk and contributory negligence, we think it unnecessary to discuss this assignment any further.

The judgment of the trial court is therefore affirmed.

BENNETT, HERR, DIFFENDAFFER, and LEACH, Commissioners, concur.

By the Court: It is so ordered.