**OHIO NAT. LIFE INS. CO. v. DOBBS et al.**

No. 19162. Opinion Filed Sept. 24, 1929.

Rehearing Denied Nov. 26, 1929.

Fred L. Holt, Roger L. Stephens, and Murray A. Holcomb, for plaintiff in error.

B. F. Willett and O. C. Wybrant, for defendants in error.

JEFFREY, C. On November 26, 1917, William B. Dobbs and Dora B. Dobbs, husband and wife, secured from the F. B. Collins Investment Company, a loan in the sum of $4,200. As a part and parcel of said transaction, Dobbs and wife gave their note for the amount due December 1, 1924, and also executed a real estate mortgage on 320 acres of land located in Harper county to secure the payment of the note. On or about February 7, 1918, the F. B. Collins Investment Company sold and assigned said note and mortgage to the Ohio National Life Insurance Company, who is plaintiff in this action. During the early part of 1921, Dobbs and wife conveyed by warranty deed the land covered by the mortgage to Charley Harmon, and Harmon assumed the indebtedness against the land. Interest payments on the loan were made by Dobbs to the F. B. Collins Investment Company, and after Harmon purchased the land, he continued to make interest payments to said company until the insurance company notified him to send his payments directly to the insurance company. On November 8, 1923, the insurance company wrote Harmon that it had made arrangements with the Godfrey Investment Company of Oklahoma City to attend to the collection of interest on the loan, and requested that Harmon thereafter make all payments of interest to the Godfrey Investment Company. On November 17, 1924, the Godfrey Investment Company wrote Harmon that the principal note in the sum of $4,200 would mature December 1, 1924; that the Ohio National Life Insurance Company, for whom the investment company had been collecting the interest, held the note. By this letter the investment company inquired whether Harmon would be in position to pay the note at maturity, or whether he wanted to renew the loan, in which event the investment company desired to handle the new loan. On December 6, 1924, the investment company received a check from Harmon drawn on the Central State Bank of Buffalo, Okla., for the sum of $4,452, being the principal amount of the note together with the last interest payment thereon. The investment company immediately deposited this check to the credit of its account in the Tradesmen's National Bank at Oklahoma City. The check was forwarded through banking channels to the First National Bank of Buffalo, Okla., where it was presented to the Central State Bank for payment. The amount of the check was debited against Harmon's account, and the First National Bank, having received credit for the amount, transmitted its draft back through banking channels in payment of the item. Before the draft issued by the First National Bank had been paid that bank became insolvent, was closed, and the amount of the check was in turn debited to the account of the investment company in the Tradesmen's National Bank.

The Ohio National Life Insurance Company, not having received the money intended to pay off the note and mortgage, began this action against Charley Harmon and wife and others to recover judgment on the note and to foreclose its mortgage. Harmon, by way of answer, alleged that the Godfrey Investment Company was plaintiff's general agent authorized to receive payment of the principal; and that said note had been fully paid. A trial was had to a jury, resulting in a verdict for all defendants. Judgment was then rendered upon the verdict, and plaintiff appealed.

The principal question raised by this appeal is, Is there sufficient evidence to support the verdict of the jury that the Godfrey Investment Company was the agent of plaintiff to collect the principal of the note? It is conceded that the investment company was expressly authorized to collect the interest, but it is contended on the part of the plaintiff that no authority was ever given the investment company to collect the principal, either expressly or impliedly; or that plaintiff ever acted in such a way as to be estopped from denying agency. The question of agency when made an issue in a case is a question of fact to be determined in law actions by a jury, and if there is any evidence reasonably tending

to support a finding that agency existed, such finding or verdict will not be disturbed on appeal. A great deal of correspondence by the plaintiff and the investment company was introduced in evidence during the trial of the case. At the time the investment company received Harmon's check and deposited it for collection, it issued its check on its personal account to plaintiff for the amount of principal and interest, and held the check to determine whether or not Harmon's check would be paid. On the date the check was received, the investment company wrote plaintiff as follows:

"Kindly forward to us all the papers in connection with the above loan as same is being paid. I am inclosing you Oklahoma release to be executed."

Upon receipt of this letter, plaintiff executed the release and returned it with the note, mortgage, assignment and abstract of title to the investment company. These papers were, on December 31, 1924, returned by the investment company to plaintiff with the following explanation:

"Until this matter is settled we do not think it advisable to have the papers in our possession. We can send for them when we need them."

"You will note the inclosed release which has been executed by you among the papers. We suggest that you destroy this release and execute another when we need it."

On November 17, 1925, plaintiff wrote the investment company stating that the loan matured December 1, 1924; that neither loan nor the interest was paid, and closed with the following request:

"Will you please let us know what your records show regarding this loan."

On December 26, 1925, Mr. Appleby, president of plaintiff company, addressed a letter to the investment company reciting the fact that a year prior thereto plaintiff had sent all of the loan papers to the investment company, at its request, for payment, but that the papers had been returned with no explanation other than the fact that the loan would not be paid at that time; and that plaintiff company had just recently learned the reason why the loan had not been paid. This letter complains of the lax manner by which the investment company had handled the matter, and requested that in the future the investment company notify plaintiff promptly of any such situation in order that it may have the advice of the legal department in handling the matter. There was other correspondence between plaintiff and the investment company.

It appears that plaintiff knew that the investment company was attempting to collect the principal of the loan, and at no time while an attempt was being made to collect the loan or straighten out the complications which had arisen, did plaintiff intimate that the investment company was exceeding its authority, but on all occasions appeared to be willing, at least, that the investment company should collect the principal as well as the interest. After the letter of November 8, 1923, in which plaintiff directed Harmon to make interest payments to the investment company, plaintiff never, in any manner, communicated directly with Harmon or with Dobbs, the original borrower. Plaintiff never at any time notified Harmon that the loan was about to mature, had matured, or that plaintiff had not received payment of the loan, even to the date of trial. The president of plaintiff company testified that his company handled considerable business through the investment company. Referring to other loans handled by the investment company for plaintiff of the same nature as the one in question, the witness gave the following testimony:

"Q. When a note of that kind matured, what course did you take to collect the principal of the note? A. Our policy—generally our policy was—generally we insisted upon payment of the paper in Cincinnati funds; that was in the beginning— Q. I am not asking what your policy was, but when a note of this character matured, did you not collect through the Godfrey Investment Company? A. I think I would have to answer that 'yes,' if you will allow me to qualify it to this extent— Q. You may make any explanation you wish. A. Collected through them to the extent that they would send us the money. * * * Q. When the note itself was approaching maturity on December 1, 1924, what steps, if any, did you take for the collection of the note? A. It was they who called our attention to the maturity—the Godfrey Investment Company called our attention. * * * Q. Did you write to Dobbs or Harmon, or take any steps direct for the collection of the note or mortgage? A. No, sir. Q. You relied entirely on the Godfrey Investment Company in that matter? A. So far as there was any reliance at all, yes."

This witness also testified that a part of such paper was paid directly to plaintiff without going through the investment company, but he was unable to name any one of this character. The witness also testified that the general practice was for the investment company to collect the money, forward it to plaintiff, and plaintiff would return the loan papers including a release of mortgage to the investment company for delivery. However, the evidence is in this case that plaintiff executed the release and for-

warded it with all the papers pertaining to the loan for delivery to the borrower without having received the money for the loan, and it appears from the record that plaintiff was led to believe that payment would be made upon receipt of the loan papers by the investment company. There was some evidence tending to show that the investment company was not authorized to collect the principal, but that such payments should be made by the borrower direct to plaintiff. At the very most, this evidence could only raise an issue on the question, for certainly the facts above detailed reasonably tend to prove that the investment company was acting as agent of plaintiff for the collection of the principal of the loan. In the case of International Life Insurance Company of St. Louis, Mo., v. Bradley, 114 Okla. 231, 246 Pac. 222, where a similar case was under consideration by this court, it was held that a method of general course of dealing between the assignee of a note and mortgage and the payee, as to a large number of other loans so handled between the parties, was sufficient to sustain a verdict that the payee was the authorized or ostensible agent of the assignee to receive a partial payment of the principal. In addition to the general course of dealing between plaintiff and the investment company relative to the investment company collecting the principal of other loans, we have the corespondence between the parties, and the testimony of the president of plaintiff company, which is almost equivalent to a clear admission that plaintiff treated and recognized the investment company in the particular case as its agent to collect the principal of the loan. This evidence to our minds is convincing that the investment company was, in fact, plaintiff's agent to receive and transmit the principal as well as the interest.

It is contended that the trial court erred in admitting certain evidence over the objection of plaintiff. A part of the evidence referred to was that given by a clerk from the office of the Godfrey Investment Company to the effect that said investment company made collection of the principal debt on other loans handled for plaintiff. The objection to this evidence rests on the fact that Harmon testified that, at the time he paid his note to the company, he did not know of said company having collected the principal on any other notes for plaintiff. The objection would be good if Harmon had been relying solely upon an estoppel. But he was attempting to prove the relation and course of dealing between plaintiff and the investment company. This was for the purpose of showing actual agency. In order that such proof be admissible for the pur-

pose of establishing an express or implied agency, it would not be necessary to show a knowledge on the part of Harmon of the facts sought to be proved. Dandois v. Raines, 115 Okla. 88, 241 Pac. 1099. Complaint is also made of the admission of a letter written by plaintiff company to one J. K. Barker at Buffalo, Okla., in reply to Barker's inquiry about some land in Oklahoma, which he desired to purchase. The record shows that an objection to the introduction of this letter was sustained, and that it was never admitted in evidence.

In the trial of the cause, defendants, over the objection of the plaintiff, introduced evidence tending to prove the reasonable value of attorneys' services in defending the foreclosure action for the purpose of fixing a fee, which was asked for in the answer. The admission of the evidence is assigned as error. A verdict having been returned in favor of defendants, the court rendered judgment in favor of defendants and against plaintiff for the sum of $455, as a reasonable attorney's fee. The assignment of error raises indirectly the question of whether the court was impowered to allow an attorney's fee for the prevailing party in a mortgage foreclosure action, independent of contract. The mortgage sued upon provides that, in case of suit thereon, the mortgagee may recover a reasonable attorney's fee not less than $420, but no mention is made of an attorney's fee in favor of the mortgagor in the event he should prevail in a foreclosure action. If this part of the judgment is upheld, it must be by virtue of a statutory provision authorizing the allowance of an attorney's fee in the absence of contract. Section 7482, C. O. S. 1921, is a part of the general lien laws of this state, and is as follows:

"In an action brought to enforce any lien, the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee to be fixed by the court, which shall be taxed as costs in the action."

Section 7406, C. O. S. 1921, being a part of the same chapter, provides:

"Contracts of mortgage and pledge are subject to all the provisions of this chapter."

Certain conflict in the decisions of this court has developed concerning the question under consideration. In the case of Oklahoma City Development Co. v. Picard, 44 Okla. 674, 146 Pac. 31, which involved a mortgage foreclosure, it is held:

"The right of the plaintiff in the foreclosure proceedings to claim an attorney's fee, and of the court to allow the same in the decree of foreclosure, depends entirely

upon the contract of the parties, since th.re is no statute in this state authorizing the same."

This case was followed in the case of St. Louis & S. F. Ry. Co. v. Corporation Commission, 95 Okla. 140, 218 Pac. 821. These cases merely deal with section 7482, supra, and apparently section 7406, which makes the provisions of the lien law applicable to mortgages and pledges, was overlooked and not considered. Section 7482 was adopted from the Kansas Code. Kansas did not have a provision similar to 7406, which section was taken from the Dakota Code. The Supreme Court of Kansas had previously passed upon the question, and held that the right to recover attorney's fees in a mortgage foreclosure action depended entirely up·m contract, there being no statute in that state authorizing the same. In other words, section 7482 was regarded by the Supreme Court of Kansas as applicable only to the enforcement of liens created by operation of law and not by contract. The Supreme Court of this state, in the two opinions hereinabove referred to, followed the opinions of the Supreme Court of Kansas in construing only one of the applicable provisions of the statute.

In the case of Holland Banking Co. v. Dicks, 67 Okla. 228, 170 Pac. 253, an action to foreclose a pledge given to secure the payment of a note, was held to be an action to enforce a lien as provided by section 7482, and that in such case an attorney's fee may be awarded the successful party in the action and taxed as costs in the case. There was no more authority for awarding an attorney's fee to the successful party in an action to foreclose a pledge than in an action to foreclose a mortgage in the absence of a stipulation in the mortgage. The right in each case and the power of the court to award an attorney's fee are given by section 7406.

In the case of Baker v. Farmers & Merchants State Bank, 117 Okla. 93, 245 Pac. 555, it was held that in a mortgage foreclosure action, the mortgagee was entitled to recover a reasonable attorney's fee in the absence of a contract therefor. This holding is squarely in conflict with the earlier holding of the court in the case of Oklahoma City Development Co. v. Picard, supra, and, in effect, overruled it, and the subsequent case of St. Louis & S. F. Ry. Co. v. Corporation Commission, supra, although no reference was therein made to either of these cases. Oklahoma City Development Co. v. Picard, 44 Okla. 674, 146 Pac. 31, and St. Louis & S. F. Ry. Co. v. Corporation Commission, 95 Okla. 140, 218 Pac. 821, in so far as they are conflict with the holding herein, are hereby expressly overruled.

Section 7406, supra, clearly and expressly makes contracts of mortgage subject to all the provisions of chapter 59. One of the provisions of chapter 59 is section 7482, which provides that in an action brought to enforce any lien, the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action, These two sections when read together clearly authorize the prevailing party in a mortgage foreclosure suit to recover a reasonable attorney's fee although no provision is made therefor by contract.

It is next complained that the court erred in refusing to give plaintiff's requested instruction No. 3. In the course of the instruction, it is stated that in order to warrant the jury in finding that one who assumes to have authority to receive payment of the principal sum on commercial paper has such authority, possession of the paper itself by such person or otherwise proof of an express authority is indispensable. We do not understand this to be the law. Mere authority to collect interest does not imply authority to receive the principal, unless the agent has possession of the papers. In the case of Chase v. Commerce Trust Co., 101 Okla. 182, 224 Pac. 148, which is relied on by plaintiff, it is held that payment of a negotiable note to a payee not in possession of the note is not binding upon an assignee, before maturity, who had possession of the paper at the time of payment, unless he had expressly or impliedly authorized such payment. One not in possession of paper may be authorized by implication to collect the principal. Implied agency was also relied upon, and evidence was produced tending to establish it, and plaintiff was not entitled to have this theory excluded from the jury.

Plaintiff's requested instruction No. 4, the refusal of which is assigned as error, is also subject to the same objection. Counsel for plaintiff assigns as separate specifications of error the trial court's refusal to give six separate requested instructions, including one for an instructed verdict. We have examined these instructions carefully, and are of the opinion that it was not error to refuse them. They are too lengthy to set out verbatim. The substance of most of them was given in the main charge, and each of them contains matters which are, in our judgment, objectionable.

Counsel for plaintiff presents separate objections to the giving of three of the instructions over their objection. From a care-

ful examination of these instructions, together with the entire charge, we are unable to find any reversible error therein, but are of the opinion that they fairly state the law of the case. On the whole, the court's instructions were exceedingly fair to plaintiff.

Lastly, it is contended that the trial court erred in permitting defendant to amend his answer after the jury had returned a verdict and the same had been filed. The record discloses that, upon request of counsel for defendant, the court made an order authorizing the answer to be amended by adding to said answer and the prayer thereof the following words: "And for all other proper and equitable relief." Counsel does not point out in what manner this amendment prejudiced plaintiff's rights, and we are unable to ascertain from the record that such amendment tended, in any way, to deny plaintiff a fair and impartial trial, or in any way affected its rights in the case.

We conclude that there is no reversible error in the record, and the judgment of the trial court is affirmed.

BENNETT, HERR, DIFFENDAFFER, and FOSTER, Commissioners, concur.

HALL, C., dissents from that part of the opinion which allows an attorney's fee.

By the Court: It is so ordered.