## LEAHY v. MONK.

No. 20424. Opinion Filed March 14, 1933.

J. H. Maxey, Chas. A. Holden, and C. S. Macdonald, for plaintiff in error.

Wilson & Duncan, for defendant in error.

WELCH, J. This is an appeal by plaintiff from a judgment rendered in the trial court in favor of the defendant, on a verdict in favor of defendant.

The facts are that, in May, 1926, plaintiff purchased 40 shares of bank stock from the defendant for $8,000, paying $4,000 in cash and executing his four notes for the remaining $4,000. Thereafter plaintiff paid two of the notes, leaving two unpaid, which were extended from time to time by the payment of interest. On June 11, 1928, plaintiff filed this suit to recover all sums of money paid to defendant, together with certain sums he had paid into the bank which had been assessed against him as a stockholder, and to cancel the two unpaid notes, tendering back the stock and alleging fraud on the part of the defendant in inducing him to buy the stock, in that de-fendant had made fraudulent statements and representations as to the value of the stock, and plaintiff further alleged the stock to be worth nothing when he bought it, and that defendant well knew it, and that he, the plaintiff, had been damaged by defendant's fraud and deceit in the full amount of the sums he had paid out.

The defendant by answer in all things denied any fraudulent acts or statements, and by cross-petition sought judgment for $2,000 upon the two unpaid notes which were past due.

Upon these issues the cause was tried to the jury, resulting in a verdict generally in favor of the defendant upon his answer, and verdict in favor of the defendant upon his cross-petition for $2,000, sued for on the two unpaid notes. Judgment was rendered for defendant, and the plaintiff's motion for new trial was overruled.

Plaintiff appeals to this court and assigns as error the failure of the court to give certain requested instructions, and error in giving one certain instruction, to which plaintiff excepted.

The evidence on the part of the plaintiff tended to show that plaintiff was 28 years of age and without experience in banking; that defendant was about 60 years of age, with many years experience in banking, and in the bank in question, with which he had been connected since its organization, or, at any rate, for many years; that the defendant represented to him that the bank stock "based upon assets of the bank * * * is worth $235 a share," that in past years large dividends had been paid, but at the present time none were being paid, because the earnings were being applied to pay for the bank's new building; plaintiff's evidence further tended to show that while his uncle was one of the original organizers of the bank, and had been a director and vice president there-of since its organization, and while his father was at the time a member of the board of directors of the bank, he, himself, knew nothing of the condition of the bank or value of the stock, and made no inquiry of his relatives, but relied upon the repre-sentations and statements of the defendant. He testified further that the defendant ad-vised him not to talk with his relatives about it.

The testimony on the part of the defend-ant tended to show that he had not made the statements exactly as claimed by plain-tiff; that he did tell plaintiff he understood the stock had been selling for two and a

quarter to two and a half as near as he could find out, but he would take $200 per share for it, and believed that it was worth that, and that he did advise plaintiff to discuss it with his father who was a director in the bank and the attorney for the bank; that it was, in fact, his opinion that the stock was worth that much.

It was shown that, in January, 1927, plaintiff was elected a director in the bank and continued as a director until a short time before the filing of this suit; that, in 1927, a large amount of paper in the bank was required to be charged off, and an assessment of 100 per cent. was made upon the stockholders which plaintiff paid. The difficulties of the bank continued and grew until in the spring of 1928, and an additional assessment upon the stockholders of 100 per cent. was required; that part of the difficulties of the bank at that time was caused by certain sums of money loaned to directors, or loaned upon notes indorsed by the directors; that the name of the plaintiff appeared upon several of such notes. That after he bought the stock in 1926, and became a director in the bank in January, 1927, plaintiff made no investigation as to the value of this stock, and did not do so until in the spring of 1928, a short time before filing this suit, at which time he did investigate, and then reached the conclusion that when he bought the stock in May, 1926, the stock was at that time of no value. Many of the notes which were in the bank held as assets of the bank in May, 1926, were among the notes subsequently ordered to be charged off, but there is nothing in the record to show that the defendant in May, 1926, did not believe the stock to be worth $200 per share. The record shows that plaintiff's uncle, and a director in the bank, thought the stock was worth $200 per share at that time, and that Mr. Mason, the cashier of the bank, at that time entertained the same view, and that plaintiff's father, a director of the bank and the attorney for the bank, entertained the same view. And that plaintiff's father in the year 1927 purchased additional stock in the bank for $175 per share, which he then thought was a fair price to pay.

At the conclusion of the evidence the plaintiff requested certain instructions which were refused, being plaintiff's requested instructions numbered 3, 1, 11, 5, and 6, in the order in which they are argued by brief.

Plaintiff's requested instruction No. 3 was to the general effect that a person who relies upon a material representation which is false, and is thereby induced to purchase property, is not precluded from recovering damages by reason of the fact that he had an opportunity to investigate for himself and did not do so, and that he has a right to rely upon positive representations of a material fact.

This instruction was refused by the trial court apparently on the theory that no issue was raised in the pleading or in the trial of the case as to whether plaintiff had an opportunity to investigate the value of the bank stock and neglected to do so, and upon the further theory that the instruction given by the court fully advised the jury as to the law applicable to the issues involved as to whether defendant had made false and fraudulent representations upon which plaintiff had relied and acted to his damage.

We find that the issue in the case was whether defendant had so fraudulently misrepresented the matter as alleged by plaintiff and denied by defendant, and that the instruction given by the court as instructions numbered 4 and 5, together with the other instructions given, fully advised the jury as to the law applicable to the issues, and that it was not error to refuse this instruction.

The plaintiff's requested instruction No. 1, which was refused by the court, in substance, quotes the statutory definition of actual fraud; the plaintiff laying special stress on the third subdivision of the statute in reference to the suppression of that which is true, by one having knowledge or belief of the fact, and the plaintiff in his brief says that in no place in the court's instruction did he submit to the jury the question of the duty of the defendant to speak and disclose to the plaintiff the true facts as he understood them, and states that no further discussion of this assignment is made, because of his discussion of the previous assignment just considered.

Again we observe that the issues do not predicate any fraud or deceit upon suppression of any knowledge which the defendant had, but on the contrary, the fraud alleged in the petition is predicated upon alleged false and fraudulent statements made, and we conclude that the court did not err in refusing this instruction.

Plaintiff's requested instruction No. 11, which was refused by the trial court, is long and involved. It deals at length with the defendant's experience and employment in the bank, and with what he did know, and should have known, as to the value of the assets of the bank, and with that which it

was his duty to ascertain and know. It deals with the inexperience and lack of knowledge on the part of the plaintiff at length. It deals with the relationship claimed by plaintiff to have existed between plaintiff and defendant, which plaintiff concluded to be "a confidential relationship." It deals with plaintiff's right to rely upon the defendant's fairness and with defendant's knowledge of such reliance on the part of the plaintiff. It deals with many things which defendant did know, and with many things that he should have known, or that it was his duty to know, and deals with the duty of defendant to affirmatively disclose things he knew, and to affirmatively disclose what he ought to have known, and deals with fraud by remaining silent or by concealment.

The pleadings in the case did not charge that defendant was guilty of fraud by concealment of known facts, nor fraud by breach of duty to ascertain and know and disclose facts, but, on the contrary, the pleadings charge that the defendant affirmatively made certain false and fraudulent statements. This requested instruction No. 11 contains many correct abstract statements of law, but some of them do not pertain to any issue raised by the pleadings. Portions of this instruction are good, but we find the law applicable thereto is correctly stated to the jury in the given instructions numbered 5 and 13, together with other instructions given.

Plaintiff's requested instruction No. 5, which was refused, is also long and involved and argumentative. It deals abstractly with the method of imputing to a person selling stock of a corporation, knowledge as to the value thereof on account of the situation of the parties. It deals with his duty to know the truth of statements which he makes, and burdens him with the duty of knowing things which he ought to have known, and with the right of the purchaser to rely upon the diligence of the seller in informing himself as to details and refers to the seller as a warrantor, and in conclusion it deals with the wrong of permitting innocent parties to suffer by reason of the mistake of the selling party. We think this instruction is both uncertain and confusing and is quite argumentative. We might also say of this requested instruction that it contains some correct abstract statements of the law, but contains some which do not pertain to any issue raised by the pleadings, and that portions of this instruction might have been given without error, but we find the law ap-

plicable thereto is correctly and sufficiently stated in the given instruction.

Both of plaintiff's requested instructions numbered 5 and 11, in the form requested, should have been refused, and the action of the trial court in refusing them is sustainable upon the authority of Friedman v. Weisz, 8 Okla. 392, 58 P. 613, wherein the syllabus is as follows:

"It is not error to refuse to give an instruction which is long, verbose, and uncertain as to its meaning, and which will tend to mislead and bewilder the jury.

"A court is not required to give an instruction which needs modifications or qualifications. If it is not good as requested, it is not error to refuse it."

See, also, 38 Cyc. 1600, wherein this text appears:

"Instructions should be clear and concise, presenting only the point or matter of law on which the party presenting them may rely, and it is very generally held that instructions which are argumentative in character are improper, and such instructions should, of course, be refused, if requested."

We, therefore, conclude that there was no error in refusing plaintiff's requested instructions numbered 5 and 11.

For his fifth assignment of error plaintiff presents his requested instruction No. 6, which was refused by the court, and which reads as follows:

"The jury are instructed that, in determining the question as to whether, in the sale of the stock in question by the defendant to the plaintiff, or not, fraud was committed as defined in these instructions; they are not limited to what may have been said or done in connection with said sale, but that they may take into consideration all of the facts and circumstances surrounding the same in addition to what may have been said or done by the parties."

We observe that, in the instruction given, the court fully advised the jury as to the issues in the case and the law relative thereto, and advised the jury that the verdict should be for plaintiff, if, from a fair preponderance of the evidence and facts and circumstances, they believe that the sale of the stock in question had been induced through fraud and deceit on the part of the defendant in that in instruction No. 8 the court said:

"In case you find from a fair preponderance of the evidence, facts and circumstances in proof, that the sale of the stock in question herein by the defendant to the plaintiff was made through fraud and de-

ceit, then the jury should find the issues in favor of the plaintiff and against the defendant."

There might have been no error in giving this requested instruction No. 6, but in view of the instruction given, the court's refusal to give this requested instruction cannot be said to be error.

For his sixth assignment of error the plaintiff presents his exception to instruction No. 12 given by the court, and plaintiff asserts this instruction was erroneously given, because it told the jury, in substance, that if the jury should find that defendant did not make any representation as to the price which he had "heard" or had been "told" the stock had been selling for, then, and in that event, the exact value of the stock at the time of the sale would not be material.

Plaintiff in his brief quotes defendant's testimony to this extent "I told him it had been selling for two and a quarter to two and a half as near as I could find out, but that I would take $200," and plaintiff now asserts that this instruction was error, because there was no testimony as to what defendant had been "told" or what he had "heard" as to the price at which the stock had been selling. It is true the defendant did not say what he had "heard" or had been "told," but he did testify to what the stock was selling for as near as he could find out. The words used by the court in writing the instruction are not identical with the words of the witness, but they fairly express the same meaning, and it seems clear that the plaintiff's contention that this instruction is contrary to the record cannot be sustained. This instruction, with the others given, properly limited the issues submitted to the jury to the issues joined in the pleadings.

No assignments of error whatever are made, except alleged error of the court in refusing the foregoing requested instructions, and the alleged error of the court in giving instruction No. 12 above mentioned.

We have concluded that there was no error in the giving or refusing to give instructions: that the instructions of the court given to the jury stated the law applicable to the issues raised with all fairness to the plaintiff. The sufficiency of the evidence to support the verdict and judgment for defendant is not challenged, and the judgment rendered in the trial court in favor of the defendant upon his answer, and for defendant upon his cross-petition, is in all things affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS OSBORN, and BAYLESS, JJ., concur. McNEILL and BUSBY, JJ., absent.