## STAGNER v. FILES.

No. 27124    March 8, 1938.

Rehearing Denied April 19, 1938.

Clearman & Ellis, for plaintiff in error.

Minton & Minton, for defendant in error.

DAVISON, J. In this action the plaintiff sues the defendant, a practicing physician, for damages on account of injuries, including pain and suffering he is alleged to have suffered as a result of the negligence of the defendant in treating his dislocated right shoulder. The plaintiff's shoulder had been dislocated when a team which he was driving ran away with him on a farm where he lived near Erick, Okla.

The evidence shows that the dislocation occurred on or about the 17th day of May, 1933, while the plaintiff had the team hitched to a cotton planter with which he was planting cotton on his farm, and that when the team ran away, he, in some manner, got caught in said farm implement and the team dragged him for a distance of approximately a quarter of a mile. The

shoulder became swollen to approximately twice its normal size, and on or about the 29th day of May, 1933, after some of the swelling had disappeared, but before the pain had ceased, the plaintiff went to Erick for the purpose of engaging the defendant to treat the shoulder. The defendant accepted the employment, examined the shoulder with a fluoroscope, and found that the injury was a subglenoid dislocation. The physician then manipulated the arm with the aid of his nurse. Both the nurse and the doctor testified that the manipulation put the shoulder back into its proper location and that the plaintiff told them that he thereby derived relief from the pain. The plaintiff, however, denied having made such a statement and maintained on the witness stand that he did not know whether the shoulder went back into place or not, but that its location had not changed since that time. The doctor admitted that after adjusting the arm and before the plaintiff's departure from his office he made no sort of an examination to determine whether the joint was in its proper place besides observing the degree of freedom with which the joint moved when the plaintiff placed his right hand on his own left shoulder and the top of his head. On this point the plaintiff testified that the defendant merely had him take hold of his left ear and his nose with his right hand. The defendant, himself, testified that he told the plaintiff that there was great possibility that the shoulder would slip out of its socket again and that he would have to be very careful with it and refrain from trying to work. He also testified that he told the plaintiff to return to his office in three days for further examination and treatment. The plaintiff and his son deny this, but the testimony of J. L. Haddock, who went to the defendant's office with them, affirms it.

The testimony introduced on behalf of the plaintiff is to the effect that he returned to the defendant's office five or six times during the next four months, always insisting that there was something still wrong with his arm and that he was still suffering with it, but was always assured by the defendant that it was "all right," until he finally went to the doctor's office in September to pay him and at that time an X-ray picture was taken of it. It is admitted that the X-ray picture revealed that the shoulder was dislocated and that the defendant then recognized the condition and advised an operation. In the meantime, the plaintiff had gone to a chiropractor and had been advised by her that the shoulder was dislocated.

The expert medical testimony, with the exception of the plaintiff's chiropractor, established the likelihood of a dislocation, such as the plaintiff's, very easily recurring after it had once been relocated, and some of the testimony tends to prove that this could happen without the patient being aware of it at the time. The medical testimony further establishes that in most cases a physician can ascertain, by a manipulation, such as the defendant claims he used, whether a shoulder is in its proper location, but some of the testimony tends to show that the taking of an X-ray picture is probably the best method of making this determination. All of the witnesses agreed, however, that it was seldom necessary to make an X-ray picture of the shoulder to determine whether the manipulation had successfully relocated the shoulder. All the medical witnesses who were interrogated upon the condition of the plaintiff's shoulder at the time of the trial agreed that an operation would be necessary to relocate the plaintiff's shoulder, and that it was doubtful as to whether such an operation would be successful, but that if it were, he would still have a partial disability in it. At some time before the plaintiff's last trip to the defendant's office, when the X-ray revealed the dislocation, the muscles of his injured arm had begun to atrophy. All of the medical witnesses agreed that this condition was brought about by the nerves or ligaments or both having become impinged and the muscles having remained in disuse. They further agreed that such an impingement could be caused by a dislocation such as the plaintiff had suffered and could result from injuries received in an accident like he had had.

All of the medical witnesses that were interrogated on the point agreed that the longer a shoulder was allowed to remain out of place, the more marked the atrophied condition became, and the slighter the chance of relocating it and restoring it to its normal ability or utility.

The defendant denied that the plaintiff returned to his office for treatment after May 29th as he had directed, and he further testified that the only times that he ever saw him after that was once on the street in June and again when he came to his office in September and paid him and allowed the X-ray picture to be made.

The defendant admitted that when there was any question as to whether or not a dislocated shoulder had actually been adjusted or relocated, it was advisable to take an X-ray picture of it.

At the close of the evidence the defense counsel moved for a directed verdict, and the same was overruled. Thereupon the defense requested six instructions, all of which were denied. Upon the cause being submitted to the jury, a verdict in favor of the plaintiff in the sum of $500 was rendered.

From an order overruling his motion for a new trial, the defendant has perfected this appeal. His assignments of error are condensed into two propositions in which he attacks both the sufficiency of the evidence and the court's instructions. The first of these two propositions is worded as follows:

"Did plaintiff's evidence sustain the burden of showing that defendant was unskillful and negligent, and that the injury complained of was produced by such want of skill or care? (a) Did the court err in overruling defendant's motion for a directed verdict when all of the evidence was in?"

Whether the plaintiff's evidence alone was sufficient to show unskillfulness and negligence on the part of the defendant and that the plaintiff was injured thereby will not here be considered, but instead we will consider the evidence as a whole to determine whether it is sufficient to support plaintiff's recovery. Though it is true that the defendant demurred to the plaintiff's evidence, yet this court has often held that if there was sufficient evidence introduced to make out a case for the plaintiff, considering the entire evidence, the case will not be reversed because of error in overruling a demurrer to plaintiff's evidence. Meyer v. White, 27 Okla. 400, 112 P. 1005; Bales v. Breedlove, 96 Okla. 280, 222 P. 542; Sinclair Oil & Gas Co. v. Allen, 143 Okla. 290, 288 P. 981. For this reason, only subdivision (a) of the defendant's first proposition will be considered, and in so doing we will consider the evidence introduced on behalf of the defendant together with that introduced by the plaintiff.

It is so well established as to be axiomatic that if there is any competent evidence reasonably tending to support a litigant's right to recovery, a verdict should not be directed in favor of his adversary, but the cause should be submitted to the jury. This court has also followed the rule that in determining whether a verdict should be directed in favor of the defendant, the evidence should be considered most favorably for the plaintiff with every reasonable inference in his favor, and if, when so considered, it establishes his right to recovery, or when reasonable minds may differ as to the effect of the evidence in this respect, there is no error in refusing to direct the verdict.

In the present case, we believe there is sufficient evidence in the record to warrant the submission of the case to the jury on the issue of the defendant's negligence, in that there was evidence introduced which tended to prove that the defendant was negligent in not discovering that the plaintiff's shoulder was dislocated long before he did, and in failing to follow such discovery with the use of proper methods to relocate it. The defendant knew that the shoulder was dislocated when the plaintiff first came to him, and he also knew that even though he was successful in relocating it upon the first treatment, the dislocation was likely to recur. The plaintiff testified that he went to the defendant's office a number of times over a period of months, complaining of the pain in his shoulder and insisting that there was still something wrong with it. The evidence of these circumstances, together with the testimony that the chiropractor discovered that the shoulder was dislocated during the period that the plaintiff is said to have been making visits to the defendant's office and was being assured by him that his arm was "all right," in our opinion, is sufficient to raise a question as to whether the defendant was negligent in not discovering a condition which existed then, according to the testimony of the chiropractor, and had not changed, according to the plaintiff, instead of letting weeks or months expire before making the discovery himself. While it is true that the expert medical testimony introduced on behalf of the defendant tended to prove that it was not customary to make an X-ray picture to determine whether the joint was in place and that the same was not usually necessary, yet there was evidence to the effect that this was the best method for such a determination, and the defendant himself admitted that when there was any question about the existence of a dislocation, an X-ray picture should be made. Since the testimony on behalf of the plaintiff tended to show that the de-

fendant attended him during the intermediate period in question, and that his shoulder was dislocated at that time and that the defendant did not discover it, we then must see if there was any evidence from which negligence on the part of the defendant could be inferred in failing to discover the dislocation then. If, by the methods known to him, he could have discovered the dislocation, then he was negligent in failing to use such methods. The chiropractor testified that from an examination she found the shoulder to be dislocated. If the circumstances were such as to create any doubt as to whether or not the shoulder was in place during the period complained of, then, according to his own testimony, the defendant was negligent in having failed to take an X-ray picture of the joint. Although there was testimony to the effect that the taking of an X-ray picture was not usually necessary in such cases, and that the fact that a patient could put his hand on top of his head was sufficient evidence that the shoulder of that arm was not dislocated, yet there was also testimony that this test alone should not be relied on, and that the armpit and the joint should be probed with the fingers to ascertain their situation. The testimony of the chiropractor indicated that one could perceive just from the appearance of the shoulder that it was out of place, and Dr. Tisdal apparently had no difficulty in determining that the humerus bone was out of its socket merely from a summary examination at the trial. The defense counsel cite McBride v. Roy, 177 Okla. 233, 58 P.2d 886, as authority for their client's contention, and point out that this court in that case said that there was no evidence therein recorded "that proper care would have required a different method of treatment if the correct diagnosis had been made in the beginning." We do not believe that this language is applicable to the instant case, for here the testimony is undisputed that the plaintiff's shoulder should have been operated upon long before the defendant advised it, and that there was much less likelihood of the success of such an operation after the defendant finally advised it than before it had been allowed to remain in that condition so long. From this and the undisputed fact that the longer the shoulder remained dislocated the more pain the plaintiff suffered and the more aggravated its condition became, we certainly cannot say that the plaintiff "failed to offer any evidence to prove that

any of his suffering was attributable to any act or omission of the defendant" as we said in the McBride Case, supra. Since, from the foregoing, it is obvious that there was evidence offered which, when considered in the light of every reasonable inference therefrom favorable to the plaintiff, was sufficient to raise a question in reasonable minds as to whether or not the defendant was negligent in his treatment of the plaintiff, the trial court committed no error in overruling the defendant's motion for a directed verdict.

The defense counsel further assert that even though it were admitted that the evidence was sufficient to show that the defendant was negligent, there was absolutely no evidence whereby the jury could say whether the condition of the plaintiff's arm was due to the character of the original injury or to the defendant's lack of skill and care in treating it. This contention does not take into consideration the undisputed fact that the condition of the dislocated shoulder was aggravated by neglect or failure to relocate it and allowing it to remain dislocated over a period of months, and that the plaintiff's chance of permanent absolute recovery was thereby greatly decreased. It also overlooks the prolonged suffering which such neglect caused. It is true that the condition of plaintiff's shoulder is not entirely due to neglect and lack of care in its treatment, but it cannot be and is not denied that said condition was aggravated thereby and that the plaintiff suffered a definite detriment from same. While it is true that there was no evidence introduced which would enable the jury to approach mathematical accuracy in the determination of just how much worse the condition of the plaintiff's shoulder was rendered by the defendant's negligence, yet, as the evidence discloses that some change in it was thereby created to the plaintiff's detriment, accompanied by the prolongation of his pain and suffering, his recovery is not defeated by the impossibility of accurately measuring such detriment. It is fundamental that when the cause and existence of damages is established with certainty, recovery thereof will not be denied because of difficulty in determining their exact amount. See 78 A. L. R. 858, annotation.

The only specific complaint contained in the defendant's brief concerning the instruction of the jury is that the trial court committed error by its failure to inform them that in order for the plaintiff to recover they

must find that the defendant was negligent and careless in his diagnosis of the plaintiff's injury. The only instruction requested on behalf of the defendant which mentions "diagnosis" is as follows:

"Gentlemen of the jury, you are further instructed that a physician is not expected to be infallible in his diagnosis and that the mere fact of an error therein does not in itself constitute negligence: and that before the plaintiff can recover herein, it must be proven by a fair preponderance of the evidence that the defendant's failure to detect a condition. if any there was, would have been readily apparent **if proper** examination had been made."

Granting that the first part of the above instruction is proper, the latter part is erroneous, and would no doubt lead the jury to believe that the defendant was under no obligation to make a proper examination, but would only be liable in the event that he made a proper examination and then was unable to detect a condition revealed thereby. As the instruction was worded, the court committed no error in refusing to give it in its entirety, and of course was under no obligation to modify it. A requested instruction which is erroneous in part is properly refused. Friedman v. Weisz, 8 Okla. 392, 58 P. 613; Sanders v. Cline, 22 Okla. 154, 101 P. 267; Continental Casualty Co. v. Owen. 38 Okla. 107, 131 P. 1084; Campbell v. Breece, 134 Okla. 266, 274 P. 1085; Chicago, R. I. & P. Ry. Co. v. Fontron Loan & Trust Co., 89 Okla. 87, 214 P. 172; Leahy v. Monk, 162 Okla. 256. 19 P.2d 1077; Ohio Nat. Life Ins. Co. v. Dobbs, 140 Okla. 147, 282 P. 306.

Besides the instruction quoted above, the defendant requested three other instructions which the trial court refused, but we are not shown wherein such refusal was prejudicial to the defendant. All of these instructions contained objectionable statements. Of these, defendant's requested instructions numbered 1 and 5 contained statements to the effect that the defendant could not be held responsible for mistakes in judgment, but we are of the opinion that he was negligent and liable therefor, if injury to the plaintiff was the result of his failure to use his best judgment or to exercise the judgment which a reasonable and prudent man of his profession would exercise under similar circumstances. See Carson v. Jackson, 281 F. 411. The test is stated as follows in vol. 48, C. J. p. 1128:

"* * * A physician is liable for the consequences if the error of judgment is so gross as to be inconsistent with the exercise of that degree of skill and care which it is his duty to apply."

The defendant's requested instruction purports to set up as contributory negligence on the part of the plaintiff a failure to return to the defendant's office immediately after May 29th for further treatment. The trial court correctly refused to give this instruction, for to have so instructed the jury, in our opinion, would have constituted an invasion of the province of the jury. The court's only duty in this connection was to define, generally, the meaning of the term "contributory negligence," and the determination of what conduct of the plaintiff, if any. constituted contributory negligence within said definition was within the jury's province. Incorporated Town of Wetumka v. Burke, 88 Okla. 186, 211 P. 522.

It is true that the court's instructions which defined the defendant's duty, generally, as being simply "reasonable and ordinary skill and care," might without error have been amplified to prescribe the skill and care which a "reasonable and ordinary member of his profession would exercise under similar circumstances," but this would have required of the defendant a higher degree of care and skill than the instructions given. We believe, however, that the instructions given were broad enough to include the proper measure of the defendant's duty toward the plaintiff. See Wojciechowski v. Coryell (Mo. App.) 217 S. W. 638. As the instructions given prescribed a broader and lesser degree of care as the defendant's duty toward the plaintiff than is prescribed by the correct rule, they were more favorable to the defendant than he had a right to expect, and therefore they afford him no ground for complaint. See Bacon v. Walsh, 184 Ill. App. 377; Krinard v. Westerman (Mo.) 216 S. W. 938; Hamrick v. Shipp, 169 Ala. 171, 52 So. 932, 934; Evans v. Clapp (Mo. App.) 231 S. W. 79. In the last case cited the court held:

"Where an instruction in a malpractice action, as to the degree of care required by the defendant physician, required less care than that imposed by law, the physician cannot complain; the instruction being unduly favorable to him."

This court has long followed the rule that a party cannot complain of an instruction more favorable to him than that. to which he is entitled. Chicago, R. I. & P. Ry. Co. v. Johnson, 25 Okla. 760, 107 P. 662, 27 L. R. A. (N. S.) 879; Creek Coal

Mining Co. v. Paprotta, 73 Okla. 119, 175 P. 235; Foreman v. Henry, 87 Okla. 272, 210 P. 1026; Smith v. Pulaski Oil Co., 88 Okla. 47, 211 P. 1047; Potter v. Bond, 98 Okla. 135, 224 P. 537; Hurt v. Paredes, 115 Okla. 139, 241 P. 772; Liberty Nat. Bank of Pawhuska v. Exendine, 156 Okla. 26, 11 P.2d 154.

Therefore, finding that the instructions requested on behalf of the defendant are objectionable, and that the instructions given were substantially correct, and that any deficiency therein was harmless error, we are of the opinion that the defendant presents no ground for reversal with reference to the instruction of the jury.

Thus, having found no cause for reversal in any of the errors alleged, the judgment of the trial court is hereby affirmed.

OSBORN, C. J., and RILEY, CORN, and GIBSON, JJ., concur.