Jannivie GREENWOOD, Plaintiff in Error,

v.

Henry W. HARRIS, Defendant in Error.

No. 38639.

Supreme Court of Oklahoma.

March 14, 1961.

Rehearing Denied May 31, 1961.

Judd L. Black, Howard K. Berry, Oklahoma City, for plaintiff in error.

Foliart, Hunt & Shepherd, Oklahoma City, for defendant in error.

JOHNSON, Justice.

Jannivie Greenwood filed this action in the District Court of Oklahoma County against Henry W. Harris, a physician, to recover damages for personal injuries resulting from defendant's negligent and unprofessional treatment of plaintiff while she was his patient. At the close of plaintiff's evidence the defendant demurred thereto and plaintiff has appealed from the order sustaining the demurrer to her evidence.

We shall refer to the parties as plaintiff and defendant or by name.

The principal allegations in plaintiff's petition are set out in paragraphs two, three and four and are as follows:

"Plaintiff alleges that on or about November 29, 1955, she consulted defendant, in his office in Oklahoma City relative to her physical condition and well being; that she employed defendant to examine her and diagnose her condition, and advise her as to whether or not she was pregnant; that defendant accepted her proffered employment, and undertook to examine and advise her; that the relationship of patient and doctor existed between plaintiff and defendant at all times complained of herein.

"Plaintiff alleges that she cooperated with the defendant and, after advising him fully of her case history, submitted for such office and laboratory examination as he required; that defendant advised her that she was not pregnant, and that laboratory tests demonstrated that she was not pregnant; that defendant advised her that she was afflicted with an internal tumor which should be removed immediately, and forthwith by a surgical operation; that defendant advised her that he could properly perform such a surgical operation and relieve her condition.

"Plaintiff alleges that she relied upon the defendant to have reasonable proficiency and skill in his profession for making diagnosis of condition, and for performing surgery; that she went to a hospital in Oklahoma City after arrangements for admission had been made by defendant, on December 4, and was operated by defendant on December 5, 1955; that the surgical operation disclosed that plaintiff was not suffering from the tumor, as reported and diagnosed by defendant but was pregnant with child; that the surgical incision made by defendant on said date was carelessly and negligently closed

with the result that a rough and unsightly scar, with painful symptoms connected with and related to it, remains; that plaintiff has suffered injury and damage as the result of defendant's careless, negligent, unskillful and unprofessional conduct."

Plaintiff charged defendant with carelessness and negligence in treating her in seven counts, as follows:

"(a) he failed to employ the laboratory tests which were reasonably available to physicians and surgeons for determining a pregnancy, and recognizing a pregnancy;

(b) he failed to employ the laboratory tests reasonably available to physicians and surgeons for determining a tumor, and, after recognizing the laboratory signs, eliminating the diagnosis of tumor from plaintiff's case;

(c) he failed to employ a reasonable amount of attention, observation and skill, in examining plaintiff, so as to note and determine that she was pregnant;

(d) he failed to employ a reasonable amount of attention, observation and skill, in examining plaintiff, so as to note and observe that she was not afflicted with a tumor, and eliminating such a diagnosis from her case;

(e) he failed to employ a reasonable amount of attention, observation and skill to his examination of laboratory reports, records and data compiled in plaintiff's case, so as to understand, from such reports and records that plaintiff was pregnant with child, and not afflicted with a tumor;

(f) he was hasty, sketchy, superficial and inattentive in his examination of plaintiff's body, and in his examination of plaintiff's laboratory records, and reports, so as to fail to note and observe that plaintiff was pregnant, and not afflicted with a tumor;

(g) he was hasty, superficial, inattentive and unskillful in his manual performance of the surgical operation

so as to leave a rough and unsightly scar at the site of the incision with nerve ends exposed and unprotected."

In the sixth paragraph of plaintiff's petition she sets out specific items of physical and mental pain and discomfort which she suffered from the negligent treatment by defendant and prayed for damages.

Defendant's first motion and demurrer were overruled after the petition was amended. Defendant answered by general denial and alleged "that in the care and treatment of the plaintiff he used such skill and learning as is possessed by members of the medical profession generally in the area of Oklahoma City, Oklahoma." Plaintiff replied by general denial and the case came on for trial before a jury February 18, 1959, resulting in a directed verdict and judgment therein for defendant, and plaintiff has appealed.

The plaintiff called as her first witness the defendant, Dr. Harris, who officed in the Osler Building in Oklahoma City. He testified that he was a physician and surgeon, duly licensed to practice in Oklahoma and a graduate of Oklahoma University and had practiced for thirty-five years and had specialized in gynecology, which is the study and treatment of "diseases of women, pelvis," and had had a wide experience in that line of practice, having examined many women to determine whether they were pregnant.

Mrs. Greenwood testified in her own behalf and told of the development of certain symptoms before and when she contacted Dr. Harris, who accepted her as a patient and arranged for her admission to Mercy Hospital in Oklahoma City. The defendant diagnosed her troubles as having a tumor which should be removed and advised her definitely as not being pregnant. Mrs. Greenwood was then asked the following question and answered as follows:

"Q. Will you relate what the conversation was you had with Dr. Harris in the hospital before you went into surgery?

"A. When he came into my room, I said, 'I want to know definitely am I pregnant' and he said, 'No, you have a tumor and it must come out.' Then I said, 'I have a tumor?' And he said, 'Yes,' and I said, 'Cancer?' And he said, 'No, and the tumor must come out.' "

She was then asked to tell about the conversation with defendant on the morning after the operation he performed on her to remove a tumor, which is as follows:

"Q. And relate, please, what the conversation was between you and Dr. Harris on the morning after the operation?

"A. He came into my room and I asked him what he had found and he said, 'I'd rather wait until your husband comes in,' and I said, 'I've already found out through an intern. I am three and a half months pregnant,' and I asked him what about it and he said, 'I'm sorry, I should have made more tests on you.' "

The plaintiff further testified as follows:

"Q. How long did you remain in the hospital? A. Until the 10th of December.

"Q. Did you have any discomfort or pain after you came out of this anesthetic? A. Yes, sir, it was the same, only worse.

"Q. What did you notice about the incision, the length of it? A. It was all the time burning and it hurt all the time, I couldn't walk, it was rough.

"Q. Did you have that uncomfortable feeling throughout the duration of this pregnancy? A. Yes, sir."

Plaintiff's husband, Durland Greenwood, testified for her, without any objection and related that he went with her to Dr. Harris and later to the hospital for an operation to remove a tumor, and talked to Dr. Harris right after the operation, as follows:

"Q. When the operation was over did you have any conversation with Dr. Harris?

"A. I did.

"Q. As near as you can recollect, tell us what Dr. Harris said when he came out of the operation room?

"A. As I remember Dr. Harris came out of the operating room and he said, 'Your wife is approximately three to three and a half months pregnant, this is a terrible thing I have done, I wasn't satisfied with the lab report, she did have signs of being pregnant. I should have had tests run again, I should have made some other tests.' He said, 'I am sorry.'"

At the close of plaintiff's evidence the defendant demurred to the same, and the trial court sustained defendant's demurrer to the evidence and discharged the jury. Plaintiff's motion for a new trial was overruled, and she appealed and submits two propositions, as follows:

"The law imposes upon a physician or surgeon the same degree of responsibility in making a diagnosis of a case or condition, as in prescribing and administering treatment to an accepted patient. And when a physician is negligent in making diagnosis of a person's condition, so that injury and damage proximately proceed from such negligent diagnosis, he will be held liable for such damage."

"A physician and surgeon in good standing in his practicing locality is a qualified expert to pass on the question of his own application of reasonable skill and learning in making a diagnosis in a particular case. And when the proof shows that the physician, defendant in a civil action, has made extrajudicial statements and admissions identifying his conduct as unskillful, and not in accord with the work of physicians of good standing practicing in the same locality, a fact question, for determination by the jury, has been established."

Under her first proposition plaintiff states that her case was based entirely upon the alleged negligence of the defendant in making a diagnosis of her condition, and calls our attention to her petition wherein all these matters were set out.

■ On a motion to direct a verdict the question is whether admitting the truth of all the evidence in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to sustain a verdict in favor of such party. Chickasha Inv. Co. v. Phillips et al., 58 Okl. 760, 171 P. 223.

■ We have heretofore held in Bungardt v. Younger, 112 Okl. 165, 239 P. 469, that the extrajudicial admissions of a defendant physician are competent to supply the expert testimony required to make out a prima facie case as against a demurrer to the evidence.

"In such a case, where expert evidence is required to make a cause of action, and there is evidence of declarations against interest proved to have been made by defendant, himself an expert and assuming to treat plaintiff with ordinary skill and care, which, with all the other facts and circumstances in evidence, tends to show a want of ordinary skill and care in such treatment and to show a causal relation of such want of skill and care with the resultant detriment complained of, such evidence is sufficient, as against a demurrer thereto, to entitle plaintiff to go to the jury."

■ The only question remaining in connection with such admissions is the sufficiency thereof to establish negligence. These admissions as shown by the record are quoted above. We can interpret these statements in no other way than as an admission that a faulty diagnosis had been made due to the failure of the defendant to use and apply the customary and usual degree of skill exercised by physicians in the community.

Having thus concluded that there was sufficient evidence to submit to a jury on the defendant's negligence in making a faulty diagnosis, we are confronted with the question involved in the first proposition of plaintiff in error: Is a faulty diagnosis, negligently made, the basis for liability for subsequent injury occasioned thereby?

"The law imposes on a physician or surgeon the same degree of responsibility in making a diagnosis as in prescribing and administering treatment." Lawless v. Callaway, Cal., 147 P.2d 604.

"It is one of the fundamental duties of a physician to make a properly skilful and careful diagnosis of the ailment of a patient, and if he fails to bring to that diagnosis the proper degree of skill or care, and makes an incorrect diagnosis, he may be held liable to the patient for the damage thus caused just as readily as he must answer for the application of improper treatment." 41 Am.Jur., Sec. 92, pg. 209.

We are of the opinion that the evidence for the defense should have been heard and that the sustaining of such demurrer at the conclusion of plaintiff's evidence was error.

The judgment of the trial court is therefore reversed for a new trial in accordance with this opinion.

BLACKBIRD, V. C. J., and WELCH, DAVISON and JACKSON, JJ., concur.

WILLIAMS, C. J., and HALLEY, IRWIN and BERRY, JJ., dissent.

BERRY, Justice (dissenting).

I am unable to agree with the majority opinion.

The record before us indicates that the defendant was a specialist in gynecology with 33 years of experience in this field.

The defendant diagnosed the plaintiff's physical condition after taking her case history, examining her person and making laboratory tests. The defendant, as an expert, in his professional opinion and judgment determined that she was afflicted by an internal tumor and that she was not pregnant. Defendant advised her of his conclusions and recommended to her that an operation was immediately necessary. It must be assumed that he weighed all symptoms to ascertain whether she was pregnant or had an internal tumor. He was unquestionably faced with a choice of treatment for this plaintiff. That choice was one of judgment. At this point no negligence has been proved, nor any evidence of omissions of any tests that would amount to negligence.

The mistake in the diagnosis became apparent after the incision. At this point certainly the evidence was insufficient to make a prima facie case, for there is no evidence by an expert to show the degree of care required by a physician to properly diagnose pregnancy or an internal tumor.

This leaves only for consideration: Was testimony by plaintiff and her husband of the asserted statements of the defendant sufficient to supply the expert testimony to show negligence on the part of the defendant?

The plaintiff testified that defendant stated in reference to the incision: "I'm sorry, I should have run more tests."

Plaintiff's husband, in regard to same matter as to statements made to him by the defendant, testified: "I wasn't satisfied with the lab reports, she did have signs of being pregnant. I should have had tests run again. I should have made some other tests." Admittedly if these statements by reasonable inference show negligence on the part of defendant, I would concur in the majority opinion.

I can only infer that after the incision the defendant knew of his mistake. He was sorry. He had been faced with "lab" reports which showed non-pregnancy while on the other hand there were signs of pregnancy. He was faced with making the decision of repeating his "lab" tests

and delaying an immediately necessary operation or operating immediately. His professional judgment dictated that he perform the surgery that appeared to him, from facts before him, as being immediately necessary.

Certainly defendant was sorry and with "hind sight", he admitted that he should have run more tests. This to me does not show an admission of negligence on the part of the defendant.

For these reasons I respectfully dissent.

I am authorized to state that Justice HALLEY concurs in the foregoing dissenting view.