The ORTHOPEDIC CLINIC, a co-partnership, and John E. McDonald, M.D., Plaintiffs in Error,

v.

Flossie HANSON, Defendant in Error.

No. 41126.

Supreme Court of Oklahoma.

June 21, 1966.

Houston, Klein & Davidson, by Lee Grigg and Richard T. Sonberg, Tulsa, for plaintiffs in error.

Paul W. Brightmire, Tulsa, for defendant in error.

HODGES, Justice.

This action was commenced by Flossie Hanson, the plaintiff, to recover damages for personal injuries allegedly sustained as a result of negligence of certain agents and employees of the defendants John E. McDonald, a licensed medical doctor, and the Orthopedic Clinic, a co-partnership. The parties will be referred to in this opinion by their trial court designations.

The plaintiff's petition alleged that she was receiving therapy treatments under the direction of Dr. McDonald at the Clinic operated by the partnership, which treatments were administered by the agents and employees of the defendants. The plaintiff further alleged that on March 15, 1961, while receiving therapy treatment from a machine designed to give electrical shock treatments, known as a medcolator, she received a third degree burn on her ankle either because the machine was defective or because it was improperly operated. The case was tried to a jury and resulted in a verdict for the plaintiff. From this verdict and the judgment of the trial court overruling defendant's motion for a new trial, the defendants have appealed to this court by petition in error with case made attached.

The history of the plaintiff's condition preceding this action is not in dispute. She sustained an injury to her back when she slipped and fell at a local grocery store on November 9, 1959. As a result she began experiencing soreness and stiffness in her lower back and pain radiated down her left leg. Her symptoms persisted during treatment by Dr. W. H. Morton, her family physician, and on March 3, 1960, he referred her to Dr. McDonald, a specialist in orthopedic surgery. On March 21, 1960, Dr. McDonald performed a laminectomy upon plaintiff and repaired a ruptured disc in her spinal column. Plaintiff was then treated by means of heat and massage applied to her lower back. In June, 1960, Dr. McDonald prescribed therapy treatments for the plaintiff's left leg. This treatment was conducted in the therapy department of the Orthopedic Clinic and included whirlpool, hand massage, and the medcolator. The purpose of this therapy treatment, according to Dr. McDonald, was to stimulate and rehabilitate weakened muscles in the plaintiff's leg. Plaintiff does not contend that Dr. McDonald did not use proper professional skill and judgment in making his diagnosis, in performing surgery, or in prescribing the postoperative treatment; but asserts that the technician in charge of the medcolator negligently burned her ankle during one of the therapy treatments.

The medcolator is a therapy machine designed to produce an artificial stimulation of the muscles of the patient by means of electrical shock. The current flows from a transducer (an object that looked like a door knob), through the patient, and into a ground pad. The movable transducer is applied to the patient by the operator and the ground pad is placed under the patient's body in the area where the transducer is being applied.

The plaintiff testified that she had received approximately 50 treatments with the medcolator prior to March 15, 1961, the date she sustained the injury complained of. On one previous occasion, plaintiff complained that the machine was stinging her when the voltage setting was increased. According to the plaintiff, she had no other difficulty with the machine until March 15, 1961. On this occasion the operator of the machine attempted to begin the treatment but nothing happened. The operator then put water on ground pad, which was hard and crusty, and adjusted the machine. When the machine did start, it immediately began stinging and burning the plaintiff's leg causing the plaintiff to state to the operator "Blanche, this thing is burning me, stop it", to which the operator purportedly replied, "Flossie, I am sorry, I will have

this thing worked on tomorrow". Plaintiff then testified that she and the operator immediately examined the inside of her left ankle and the area was already turning "real pink". That ended the treatment and the plaintiff went home. Upon arrival at her home, plaintiff removed her shoe and sock as her ankle continued to burn. Upon examining her ankle she discovered that the surface had blistered and burst, and that the outer layer of skin had come off with her sock leaving a raw place on her ankle "about the size of a half dollar". The plaintiff testified that she was first treated for the burn by the nurses at the Clinic who applied steaming hot packs to the open wound causing her considerable pain. She stated she told these nurses that she had burned her foot by placing it in hot water at home because she did not wish to cause the operator of the medcolator any undue difficulty. When the wound did not heal but appeared to get worse, she brought the matter personally to Dr. McDonald's attention. According to the plaintiff, Dr. McDonald would not accept her explanation that the ankle had been burned but stated rather that the condition resulted from poor circulation in the leg. As her ankle failed to respond to the treatment prescribed by Dr. McDonald, the plaintiff returned to Dr. Morton, her family physician for treatment. Dr. Morton hospitalized the plaintiff for a period of twenty-two days while he treated the ankle injury. A thin layer of skin grew over the burned area but it is still tender and breaks open if it comes in contact with water or any type of liquid.

Doctor W. A. Morton testified for the plaintiff. He stated that he had been a general practitioner in Tulsa, Oklahoma, since 1937 and that he was the plaintiff's family physician; that he had originally sent her to Dr. McDonald; that she subsequently returned to his care in the summer of 1961 for treatment of an ulcer on her ankle; that she gave him a history at that time of having sustained the injury by being burned by equipment at the Orthopedic Clinic; and that he hospitalized the plaintiff and treated the ulcer. He further testified that he was unable to diagnose the cause of the ulcer on plaintiff's ankle, but that it was not incompatible with having been caused by an electrical burn. On cross-examination he also acknowledged that the ulcer could have been caused by poor circulation but stated that it did not possess all the characteristics of an ulcer of that type.

This concluded the plaintiff's case-in-chief to which the defendants entered a demurrer to the evidence for failure to prove a cause of action against them. This demurrer was overruled by the court and the defendants proceeded to present their evidence.

The evidence for the defense was presented by Dr. McDonald, and three female employees of the Clinic. The employee, who operated the medcolator, denied that plaintiff ever sustained a burn while being treated with that machine. She admitted on cross-examination that it would not be proper for her to attempt to fix the machine if anything was wrong with it but that she should immediately shut it off and report the difficulty to her supervisor. She further recalled that there was one occasion during the treatment of the plaintiff when the current would not come through the transducer. She stated that when she was able to get the current started on this occasion "I was not getting the reaction I wanted".

Dr. McDonald testified that he has been engaged in the practice of medicine since 1928 and specializes in orthopedic surgery. He testified in some detail concerning the history of the plaintiff's injury, the surgery performed, and his reasons for prescribing physical therapy. He expressed the opinion that the ulcer on plaintiff's leg did not have the appearance of an electrical burn. It was his diagnosis that the condition resulted primarily from poor blood circulation in the plaintiff's leg.

The remaining two witnesses, nurses at the Clinic, testified that they had treated

the ulcerated condition on plaintiff's ankle and that the plaintiff had never claimed, in their presence, to have suffered a burn at the Clinic but had told them that she burned her ankle at home by placing it in water that was too hot.

It is the first contention of the defendants that the trial court erred in not directing a verdict for the defendants at the close of all the evidence.

█ It is well settled that in determining whether the plaintiff's evidence is sufficient to withstand defendant's motion for a directed verdict, the trial court should consider as true all of the evidence favorable to the plaintiff together with all reasonable inferences to be drawn therefrom, and should disregard all conflicting evidence favorable to the defendant. Sisler v. Whitten, Okl., 393 P.2d 497; Price v. Smith, Okl., 373 P.2d 242; Greenwood v. Harris, Okl., 362 P.2d 85.

In support of their contention, the defendants' first argument is that expert testimony was required to establish that the plaintiff sustained a burn and that the medcolator was capable of causing this burn.

█ Plaintiff's testimony as to the manner in which the injury occurred was unequivocal and certain. She testified that on March 15, 1961, when the treatment with the medcolator began she felt a stinging and burning sensation upon her ankle where the transducer was being applied; she then observed that the area of the ankle to which the transducer had been applied was turning "real pink"; and she further observed that within a short time the area blistered, burst and the outer skin came off. Her expert witness, Dr. Morton, testified that the ulcerated condition of her ankle was consistent with having been caused by an electrical burn. He further testified that the ulcer, in his opinion, did not possess all the characteristics of a circulatory ulcer as diagnosed by Dr. McDonald. The jury was not bound to accept the testimony of the defendants' expert witness in this situation as to the nature and cause of plaintiff's injury. This court adheres to the view that the weight to be accorded to expert testimony is to be determined by the trier of facts. Mid-Continent Pipe Line Co. v. Price, 203 Okl. 626, 225 P.2d 176; Gulf Oil Corp. v. Hughes, Okl., 371 P.2d 81; Sisler v. Whitten, Okl., 393 P.2d 497.

█ We recognize, as the defendants point out, that in certain cases the injury is of such a character that expert medical testimony is required to establish its cause or origin. See, e. g., Veale Electric Co. v. Carmichael, 205 Okl. 287, 237 P.2d 457; Nu-Way Laundry & Cleaners v. State Industrial Comm., 194 Okl. 101, 147 P.2d 795. Such cases involve situations where the origin of the injury is subjective or obscure and not readily apparent to the layman or where there are several equally probable causes of the condition. But even in cases of this nature, testimony of a qualified physician that the injury *could* have resulted from a certain cause together with corroborating evidence of the manner in which the injury was sustained is sufficient. Oklahoma Natural Gas Co. v. Kelly, 194 Okl. 646, 153 P.2d 1010; Glen L. Wigton Motor Co. v. Phillips, 163 Okl. 160, 21 P.2d 751. The corroborating evidence may be supplied by the testimony of a layman who is competent to testify as to those facts in connection with such an injury which he is capable of observing. Southwestern Cotton Oil Co. v. Hall, 172 Okl. 644, 46 P.2d 455; Griesel v. Fabian, 184 Okl. 42, 184 P.2d 634; Shinn v. Francis, Okl., 404 P.2d 1017. Assuming arguendo the validity of defendants' argument, the plaintiff's testimony as to the instantaneous onset of the ulcerated condition of her ankle following treatment with the medcolator, which treatment was accompanied by a burning sensation, coupled with the expert testimony of Dr. Morton that the ulcer *could* have been caused by such a burn would provide a sufficient basis for the jury's determination in this case. But we do not agree that expert testimony was required. In those cases where the cause of the injury is apparent without the aid

of science and the injury is objective rather than subjective in nature, as in the instant case, testimony of a layman as to the manner in which the injury was sustained is sufficient, without expert testimony, to send this issue to the jury. See Aderhold v. Stewart, 172 Okl. 72, 46 P.2d 340; Oklahoma Union Ry. Co. v. Bertrand, 129 Okl. 263, 264 P. 621; See also Barnett v. Richardson, Okl., 415 P.2d 987.

We conclude that the plaintiff's testimony concerning the manner in which her injury was sustained was competent and was sufficient to make out a prima facie case that she was burned and that the medcolator was the cause of the injury. Indeed, accepting her account of the incident as true, as we must on this appeal, it would be unreasonable to conclude that the injury could have resulted from any other source. If, as the defendants assert, the medcolator may have been incapable of causing such a burn, the burden was upon them to establish this fact to rebut the plaintiff's evidence, and this they did not do. See John A. Brown Co. v. Shelton, Okl., 391 P.2d 259, 265.

The defendants next contend that, even if the plaintiff was burned and the therapy machine did it, the evidence is insufficient to establish negligent operation of the medcolator.

The defendants stipulated that the operator of the medcolator and the nurses in the Orthopedic Clinic were the employees of the defendants and were acting under the supervision and control of the Dr. McDonald in performing therapy treatment upon the plaintiff. The defendants do not deny that they are responsible for the negligent conduct of their employees in connection with this treatment, Emerson v. Chapman, 138 Okl. 270, 280 P. 820; Aderhold v. Bishop, 94 Okl. 203, 221 P. 752, 60 A.L.R. 137, but contend that there is no showing that the operator of the therapy machine failed to use due care. We disagree.

The evidence established that if any difficulty arose in connection with the therapy machine, the operator, who was not a nurse and who possessed no scientific knowledge concerning how this "highly technical" machine worked, was to immediately shut off the machine and report the matter to her supervisor. The plaintiff testified that the operator had considerable difficulty with the machine during the therapy treatment in which she was burned but made no attempt to contact her supervisor and instead attempted to correct the malfunction herself. The operator denied this, but after considerable cross-examination did recall that on one occasion, near the time plaintiff claimed to have been burned, she did have difficulty starting the machine and testified that when the machine did start "I was not getting the reaction I wanted". Further, the plaintiff testified that immediately following her complaint of being burned, the operator stated "Flossie, I am sorry, I will have this thing worked on tomorrow". It is reasonable to conclude from this admission that the operator was aware of a defect in the machine at the time the treatment was administered, but proceeded with the treatment despite this fact and contrary to her supervisor's instructions. The evidence is not in dispute that the therapy treatment was not supposed to burn the plaintiff and that she had not suffered any ill effects from the 50 previous treatments. It is also not disputed that the plaintiff did develop an ulcer on her ankle at approximately the time she claims this incident occurred. Under these circumstances, we believe the matter was properly submitted to the jury to determine whether the injury occurred as a result of the negligent operation of the therapy machine or use of the machine with knowledge of its defective condition, or whether the condition developed from poor circulation in the plaintiff's leg as contended by the defendants.

The defendants contend that the trial court erroneously submitted the case to the jury on the theory of res ipsa loquitur, and that this doctrine is inapplicable in malpractice cases. Hembree v. Von Keller,

189 Okl. 439, 119 P.2d 74; Cooper v. Mc-Murry, 194 Okl. 241, 149 P.2d 330. Assuming that this is a malpractice case, it is apparent that the trial court did not submit the case to the jury on the theory of res ipsa loquitur. The court instructed the jury that the burden of proof was upon the plaintiff to establish the allegations of the petition by a preponderance of the evidence and further specifically instructed that "the mere happening of an accident raises no presumption of negligence". Contrary to the assertion of the defendants, there is considerable circumstantial evidence of negligence, as seen above, from which the jury could properly infer the existence of negligence. It is well settled that negligence may be established by circumstantial evidence and the reasonable inferences to be drawn therefrom. Mid-Continent Pipe Line Co. v. Price, 203 Okl. 626, 225 P.2d 176; Hudson v. Blanchard, Okl., 294 P.2d 554. The jury could also properly consider the extrajudicial admission by the operator of the medcolator as evidence that the defendants were aware that the machine was defective. Missouri, O. & G. Ry. Co. v. Davis, 54 Okl. 672, 154 P. 503; see also Greenwood v. Harris, Okl., 362 P.2d 85. In connection with this admission, we stated in Happel v. Kennicutt, Okl., 376 P.2d 320, that where a defective machine is shown to be in the exclusive control of the defendant at the time it causes an accident, this is evidence in itself (not peculiar to res ipsa loquitur cases) to be considered by the jury in determining whether the defendant knew or should have known of the defective condition.

We conclude, after careful review of the record, that the evidence is sufficient to support the determination of the jury that the plaintiff was injured through the negligence of the defendants.

The defendants also contend that the court did not properly instruct the jury concerning the standard of care required of the defendants in a malpractice case.

 This is not the "usual" malpractice case. See Duke Sanitarium v. Hearn, 159 Okl. 1, 13 P.2d 183. There is no contention that Dr. McDonald did not possess the requisite skill and learning of other members of his profession, or that the therapy treatments were improperly prescribed, or that these treatments were not successful. The sole basis of the complaint is that the operator of the medcolator did not use proper care to prevent an unnecessary injury to the plaintiff. Under the circumstances of this case, we believe the jury was properly instructed that the operator of the medcolator should be held to the degree of care exercised by "an ordinary prudent person in the same or similar circumstances". The defendants concede that this, and the other instructions given by the court, would not have been prejudicial to them if the court had "followed up" with additional instructions emphasizing the particular standard of conduct required of physicians. The standard, according to the defendants, which should have been emphasized was "ordinary care and skill of others in the profession" and not simply that of "an ordinarily prudent man". A similar question was discussed by the court in Stagner v. Files, 182 Okl. 475, 78 P.2d 418:

> "It is true that the court's instructions which defined the defendant's duty, generally, as being simply 'reasonable and ordinary skill and care' might without error have been amplified to prescribe the skill and care which a 'reasonable and ordinary member of his profession would exercise under similar circumstances,' but this would have required of the defendant a higher degree of care and skill than the instructions given. We believe, however, that the instructions given were broad enough to include the proper measure of the defendant's duty toward the plaintiff. * * *"

As the instruction given were more favorable to the defendants than those which they assert they were entitled to receive, the defendants have no basis for complaint. Stagner v. Files, supra; American Life Ass'n v. Rogers, Okl., 281 P.2d 183; Taylor v. Birks, Okl., 325 P.2d 737.

The defendants also assert that the trial court erred in submitting the case to the jury on alternate theories of negligence: (1) that the medcolator was improperly operated; (2) that the medcolator was defective, which defect should have been known to the defendants. The defendants argue that the evidence is insufficient as a matter of law to establish negligent operation of the medcolator and that this theory was improperly submitted to the jury. We have previously considered the evidence in detail, and in our opinion it is sufficient to support the jury's verdict on either theory of negligence. The instruction was therefore proper.

The evidence presented is sufficient to support the jury's finding that the defendants negligently burned the plaintiff with their therapy machine, and the instructions given were fair, and favorable to the defendants. The judgment of the trial court is affirmed.