**Stormy Gail ROBERTSON, now Staton,
Appellant,**

v.

**Julius A. LaCROIX, M.D., Appellee.**

**No. 47485.**

Court of Appeals of Oklahoma,
Division No. 1.

March 25, 1975.

Released for Publication by Order of Court
of Appeals April 17, 1975.

Don Ed Payne, Hugo, for appellant.

Calvin W. Hendrickson, Oklahoma City, for appellee.

BOX, Judge:

An appeal by Stormy Gail Robertson, now Staton, appellant and plaintiff in the trial court, from an order of the District Court of Choctaw County, sustaining a demurrer to plaintiff's evidence in favor of the appellee and defendant below, Julius A. LaCroix, M.D.

Plaintiff brought this action to recover damages for personal injuries allegedly sustained as a result of certain acts of negligence committed by her physician, Dr. LaCroix. She had been suffering from a chronic inflammatory disease of the female reproductive organs for some years and regularly consulted Dr. LaCroix for this problem. In May of 1972, Dr. LaCroix determined that plaintiff's deteriorating condition necessitated abdominal surgery. Plaintiff entered Choctaw Memorial Hospital on May 31, 1972 and on the following day Dr. LaCroix performed surgery

upon her, resulting in the removal of plaintiff's uterus, fallopian tubes, ovaries and appendix. She remained hospitalized until June 9, 1972.

Dr. LaCroix subsequently discovered that plaintiff had a vesico-vaginal fistula, which is an opening between the bladder and the vagina. This defect, approximately one centimeter in diameter, was causing urine to flow from her bladder into her vagina and on to the outside of her body. Corrective surgery was required and was performed by Dr. Eugene Todd in the latter part of September, 1972. Plaintiff's recovery from this surgical procedure was uneventful, except that her bladder capacity was permanently diminished. She subsequently brought this action contending as her primary theory of recover that during the operation the defendant negligently punctured, cut or otherwise caused with some instrument, the identity of which was unknown to her, the opening in her bladder.

Plaintiff testified at trial that three to four days prior to her discharge from the hospital she began to have difficulty retaining urine. She complained to nursing personnel concerning this problem, and they placed a pad on her bed. Her urine retention difficulties worsened during the remainder of her hospital confinement and following her release. This problem eventually progressed to the point that the leakage of urine was constant, requiring her to wear diapers and rendering her unable to perform household duties or care for her children.

Plaintiff testified that she complained to defendant about this difficulty numerous times. Finally on June 21, 1972, defendant saw plaintiff in his office and placed a catheter in her bladder in an effort to alleviate what he apprehended to be a bladder problem. This procedure was unsuccessful and plaintiff returned to defendant's office, was again examined and at this time the fistula was discovered.

According to the testimony of plaintiff and her mother, Cady Castleberry, plaintiff had a conversation with Dr. LaCroix either on June 21, 1972, when the fistula was discovered, or a few days thereafter. Defendant was allegedly asked what caused the fistula. Plaintiff testified that he responded he "had racked his brain trying to figure out what he had done differently or he had done wrong, but the only thing he, knew was that he just made a mistake and got over too far." Mrs. Castleberry's recollection of this remark was: "He said he had thought and thought and he couldn't think of anything unless he just made a mistake of going over a little too far, getting over a little too far in the surgery."

Dr. LaCroix, who was called to testify as plaintiff's expert witness, stated that there were two possible causes of plaintiff's fistula. "It could have been made by an incision or a puncture of the bladder by an instrument or by a suture through the wall of the bladder or it could have been due to an embarrassment of the circulation in the area which in turn would cause the dying of the tissue and a hole to form at some later date."

Dr. LaCroix ruled out the possibility that the fistula could have been caused by an instrument or a suture because no instruments or sutures were employed directly on the bladder, although some instruments were used as close to the bladder as a quarter of an inch. He also stated that if some instrument had interfered with the bladder, the mistake would have been recognized immediately because it would cause noticeably excessive bleeding.

These conclusions were partially contradicted by the testimony of Dr. Todd, which was taken by deposition and read to the jury. Dr. Tood was asked at what point in time a fistula caused by a misplaced suture during surgery would be noticed and the following colloquy occurred.

"A It depends on whether it's in the wall of the bladder, through the wall of the bladder, just in the edge of the bladder, or . . .

Q Well, if the suture, itself, completely penetrated the wall of the blad-

der, the fistula would really be present at that time?

A Not necessarily, it would usually take a few days to develop . . .

\* \* \* \* \* \*

A I think, short of just making an incision in the bladder, itself, and leaving a hole in the bladder, and probably removing some tissue to the bladder, to leave a good gap there, that a fistula usually takes some time to develop; few days to weeks, after that."

Dr. LaCroix testified that the plaintiff was catherized for approximately 48 hours after the surgery and that during this time, several hundred cc's of urine was collected by the catheter. He concluded that this was evidence that the fistula did not occur during the surgery but must have developed some days thereafter.

According to Dr. LaCroix's testimony, if the fistula was caused by an embarrassment of the circulation and consequent death of tissue, it would require a period of ten days to two weeks to develop. Dr. Todd essentially concurred with the defendant in these conclusions, although he stated that such a fistula would require from two to four weeks to develop.

At the close of plaintiff's evidence the trial court sustained defendant's demurrer. Accordingly, the question presented by this appeal is whether plaintiff's evidence, viewed in the light most favorable to her, established a "prima facie case" of defendant's negligence. More specifically, the questions dispositive of this appeal are:

(1) Whether plaintiff's evidence was sufficient to establish that the alleged malpractice was the "proximate cause" of the injury for which she complains;

(2) Whether plaintiff failed to produce evidence sufficient to establish the medical standard in the community; and

(3) Whether a statement attributed to the defendant constituted an extrajudicial admission of negligence.

The trial court was bound to accept as true all evidence favorable to the plaintiff and every reasonable inference to be drawn therefrom, while disregarding any conflicting evidence favorable to the defendant. Martin v. Stratton, Okl., 515 P.2d 1366. The demurrer to plaintiff's evidence should not have been sustained unless there was an "entire absence of proof to show any right of recovery." Martin v. Stratton, supra.

It is well settled that in all but the extraordinary medical malpractice case, the plaintiff has the burden of producing expert testimony to support a prima facie case of negligence. As the court observed in Orthopedic Clinic v. Hanson, Okl., 415 P.2d 991, at page 995, if the origin of the injury is subjective or obscure and not readily apparent to a layman or if there are several equally probable causes of the condition, testimony of a qualified physician is essential to establish a reasonable probability that the physician's negligence caused the injury. This is such a case.

As we noted above, Dr. LaCroix testified that there were two possible causes of plaintiff's injury: either an incision or puncture of her bladder or an embarrassment of her circulation in the area injured. Only the former of the two causes is consistent with the theory that Dr. LaCroix was negligent. Thus Dr. LaCroix and Dr. Todd testified that a fistula occasioned by an incision or puncture was a recognized hazard of the type of surgery performed on plaintiff. Dr. LaCroix also stated that an injury to patient's bladder, caused in this manner, would be "quite careless" and the result of "poor technique." But neither doctor concluded that the fistula was probably brought about by the negligent cause. Nor did either exclude the non-negligent cause as the cause in fact of plaintiff's injury. Viewed in the light most favorable to plaintiff and excluding the self-serving statements of the defendant, we cannot conclude that plaintiff's expert medical testimony by itself establishes that defendant's negligence was

the probable cause of her injury. As the Supreme Court observed in Martin v. Stratton, supra, at page 1371, of 515 P.2d:

"In situations where evidence indicates there are several possible causes of an injury and no layman could know or have any reasonable basis for an inference regarding cause, testimony by a physician that a specific occurrence might, could, or would produce a certain result is no more than an assurance that such result was scientifically possible and does not alone constitute substantial evidence that such occurrence or condition did cause the result where the evidence does not exclude all other causes."

■ However, testimony of a medical expert witness that an injury could have been caused by a certain event, together with the corroborating evidence of a layman as to those facts concerning the injury which a layman is capable of observing may be sufficient to allow the issue of causation to be submitted to the jury. Delk v. Gill, Okl., 462 P.2d 530; Orthopedic Clinic v. Hanson, supra; Shinn v. Francis, Okl., 404 P.2d 1017; Griesel v. Fabian, 184 Okl. 42, 84 P.2d 634. When such lay and expert testimony is considered together, it must warrant the conclusion that a preponderance of the evidence discloses facts and circumstances establishing a reasonable probability that defendant's negligence was the proximate cause of the injury. Delk v. Gill, supra; Griesel v. Fabian, supra.

Plaintiff's expert medical testimony established that if her injury was caused by an embarrassment of her blood circulation, which is clearly not attributable to any negligence on the part of the defendant, it would have required at the very least 10 days and at the most four weeks to develop. It was her testimony that the leakage of urine symptomatic of her injury was first noticed by her on the fourth or fifth day after surgery. She also stated that she had very little recollection of the first 2 or 3 days following surgery and that the injury might have been apparent earlier.

■ We think, when viewed together with the expert medical testimony, that her testimony reasonably tends to exclude an embarrassment of the blood circulation as a probable cause of her injury. Assuming, as we must, the truth of her statements, the injury manifested itself at least five days prior to the *earliest probable time, according to the expert testimony of the defendant himself,* when a fistula caused by an embarrassment of her blood circulation could have occurred.

■ All of the expert testimony attributed plaintiff's injury to either of two causes. Since plaintiff's testimony reasonably tends to exclude the non-negligent cause, a jury could reasonably infer that the injury was caused by a negligently inflicted cut or puncture of her bladder during surgery. Furthermore such an inference is supported by the testimony of Dr. Todd that a fistula caused in such a manner would not necessarily be noticed during surgery but might, as in the plaintiff's case, take a short time to develop.

■■ It is true of course, that plaintiff produced no direct evidence that her injury was caused by surgical error. But all that is required is that the circumstantial evidence she relies upon have sufficient probative force to constitute the basis for a legal inference, rather than mere surmise or speculation, and that the circumstances proved lead to a conclusion that defendant's negligence caused the injury with reasonable certainty and probability. Martin v. Stratton, supra. We hold that she has met this burden.

■ Plaintiff urges that any doubt as to whether her evidence establishes a prima facie case of negligence is resolved by the extra-judicial admission of the defendant. We agree. It is well settled in Oklahoma and elsewhere that the extrajudicial admission of a party opponent has the same legal competency as direct expert testimony to establish the requisite elements of a prima facie case of negligence in a medical malpractice action. Bungardt v.

Younger, 112 Okl. 165, 239 P. 469; Greenwood v. Harris, Okl., 362 P.2d 85. See 1 Washburn L.J. 614; and cases cited in 70 C.J.S. Physicians and Surgeons § 62.

The only question presented here is whether the statement attributed to the defendant is of sufficient quality to constitute an extrajudicial admission of negligence. The Supreme Court of California in the case of Lashley v. Koerber, M.D., 26 Cal.2d 83, 156 P.2d 441, 444, observed:

" . . . [A]n extrajudicial statement amounting to no more than an admission of bona fide mistake of judgment or untoward result of treatment is not alone sufficient to permit the inference of breash of duty; the statement 'must be an admission of negligence or lack of the skill ordinarily required' . . .. where the statements are reasonably susceptible of more than one meaning, the meaning is to be placed on them which is favorable to the plaintiff."

We hold that the defendant's statement that he "just made a mistake and got over too far" is more than a mere statement of mistaken judgment; it constituted an admission of negligence during the performance of the surgery. Whether this admission by itself would be sufficient to satisfy the requirements of expert medical testimony to establish a prima facie case we are not required to decide. We simply hold, in line with a number of recent cases, that this extrajudicial admission is additional highly probative evidence tending to establish that the proximate cause of plaintiff's injury was the negligence of the defendant in performing the surgery. See Jacobsen v. Harting, Ky., 397 S.W.2d 775 ("I should have run that test"); Sheffield v. Runner, 163 Cal.App.2d 48, 328 P.2d 828 ("Should have put her in the hospital"); Wickoff v. James, 159 Cal.App.2d 664, 324 P.2d 661 ("Boy, I sure made a mess of things"); Walter v. England, 133 Cal.App.

676, 24 P.2d 930 ("made a mistake"). And see Orthopedic Clinic v. Hanson, supra, wherein the court held:

"Syllabus by the Court

"2. Where all the evidence, including circumstantial evidence, the reasonable inferences to be drawn therefrom, and the extrajudicial admission of the defendant, make it appear more probable that the plaintiff's injury resulted from the negligence of the defendant than from another source, judgment for the plaintiff is proper."

Additionally, we hold that plaintiff sustained her burden of producing expert evidence establishing the medical standard in the community. It is settled that this evidence may be found in the testimony of the defendant physician and his extrajudicial admissions have the same effect as direct expert testimony. Greenwood v. Harris, supra. Testimony of the defendant, who was one of the most experienced surgeons in the community in performing operations of the kind performed on plaintiff, adequately established the prevailing standard of medical practice. Furthermore, by his own testimony the defendant established that if plaintiff's injury was caused by cutting or puncturing the bladder during surgery, it would have been the result of his departure from this standard. Moreover, the defendant's extrajudicial admission can be interpreted only as a failure to apply the customary and usual degree of skill exercised by physicians in the community.

We conclude that plaintiff's evidence established a prima facie case of negligence and therefore reverse and remand for a new trial.

Reversed and remanded.

ROMANG, P. J., and REYNOLDS, J., concur.