**Edith Susie SMITH, Appellant,**

v.

**KAREN S. REISIG, M.D., INC., an Oklahoma professional corporation; and Karen S. Reisig, M.D., an individual, Appellees.**

No. 59561.

Supreme Court of Oklahoma.

July 24, 1984.

As Corrected Aug. 2, and Aug. 13, 1984.

Berry & Berry, P.C. by Howard K. Berry III, Oklahoma City, for appellant.

Short Barnes Wiggins Margo & Adler by John Wiggins and George W. Paull, Jr., Oklahoma City, for appellees.

HODGES, Justice.

Edith Susie Smith, the appellant and plaintiff below, brought this action against Karen S. Reisig, M.D., and her professional corporation, seeking recovery for injuries sustained during a hysterectomy which she contended was unnecessary. In addition, Ms. Smith alleged the physician was liable for injuries to her bladder when it was "inadvertently" cut or punctured during the surgical procedure.

At trial, Ms. Smith introduced the testimony of the physician, her own testimony, and deposition testimony of a consulting urologist who was initially called in by Dr. Reisig to insure that the bladder injury had been properly repaired. There was no dispute in the evidence that the hysterectomy had in fact been performed or that the bladder injury had occurred during that surgery. At the conclusion of Ms. Smith's case, the defendants demurred to her evidence, and the trial court sustained the

demurrer, entering judgment for the defendants. She appeals from that ruling.

## I.

Ms. Smith contends initially that her evidence established a prima facie case of negligence by the physician. This is based upon the physician's statement in the medical records that the injury to the bladder was "inadvertent". She offered no third-party expert testimony of any failure of the physician to meet the applicable standard of medical care, but argues that expert opinion of deficient care was supplied by the extra-judicial admission contained in the medical records.

■ It is clear that an extra-judicial admission may satisfy the expert opinion requirement in medical malpractice cases. *Greenwood v. Harris*, 362 P.2d 85 (Okla. 1961). The question to be answered is whether the physician's characterization of the injury in the records constitutes an admission of deficient care.

In her post-operative notes, the physician described the surgical procedure and noted that there had been an "inadvertent entry of bladder" which was repaired. She repeated this statement in the discharge summary, noting that an "inadvertent cystotomy" had occurred during the hysterectomy. Arguing that the dictionary definition of "inadvertent" equates it with "careless" or "heedless", Smith says the physician's characterization of the bladder incision as "inadvertent" is tantamount to an admission that it resulted from carelessness.[1]

Smith would have us take a single statement out of the entire hospital record, and conclude on that basis alone that there was sufficient evidence that the manner in which Dr. Reisig performed the surgery was substandard. The admission made here is not comparable with the ones found sufficient previously in cases recognizing the use of extra-judicial admissions. The reported opinion in *Bungardt v. Younger*,

112 Okla. 165, 239 P. 469 (1925), does not quote the admissions directly but indicates that they tended to prove that the doctor's failure to diagnose and treat a broken fibula lead to permanent injury to the plaintiff.

In *Greenwood v. Harris*, supra, the physician had recommended and performed surgery on the plaintiff for a tumor, despite clinical indications of pregnancy. The physician stated that he "should have made more tests," and that "this is a terrible thing that I have done, I wasn't satisfied with the lab report, she did have signs of being pregnant. I should have had tests run again, I should have made some other tests." Finally, in *Robertson v. La Croix*, 534 P.2d 17 (Okla.App.1975), the Court of Appeals determined that there was sufficient evidence to withstand demurrer where there was competent expert testimony as to how a vaginal fistula could occur during a hysterectomy and other evidence which eliminated all causes other than negligence. The court ruled that evidence, combined with an admission by the physician that he "just made a mistake and got over too far," was sufficient to withstand demurrer.

■ In each of those instances the admission referred to some act of the physician which should not have been taken or an act not done which should have been. In this instance, the admission refers not to some act on the part of the physician but to the result. In context, it does not appear that Dr. Reisig intended to state anything other than that the bladder injury was unintentional. There was no admission that her care was substandard, and the trial court will not be reversed on the theory that this admission supplies the required expert testimony of lack of reasonable medical care.

## II.

Ms. Smith also contends that she was entitled to a jury determination concerning

---

1. The only dictionary definition cited by Smith is as follows from *Webster's* New Collegiate Dictionary; G.C. Merriam Co., Springfield, Mass., 1980:

"Inadvertent. 1. Not turning the mind to a matter; inattentive;
2. Unintentional."

her theory of lack of informed consent based upon her assertion that treatment by hormonal therapy was a viable alternative to surgery, and was not disclosed. The physician contended successfully at trial that Ms. Smith had not established a prima facie case for recovery under that theory.

■ "Informed consent," as it was adopted in *Scott v. Bradford*, 606 P.2d 554 (Okla.1980), entails three basic elements: 1) nondisclosure, 2) causation, and 3) injury. The physician contends that Ms. Smith's evidence was insufficient on each of these elements. In discussing the physician's duty under informed consent in *Scott v. Bradford*, supra, we said at page 558:

"The doctrine imposes a duty on a physician to inform a patient of his options and their attendant risks. If a physician breaches this duty, patient's consent is defective, and physician is responsible for the consequences."

As to nondisclosure, the evidence was disputed. Viewing that evidence in the light most favorable to Ms. Smith, we must assume that Dr. Reisig did not inform her patient of the available alternative to the hysterectomy, hormonal therapy. The physician's testimony and records established this alternative as viable and possibly preferable to the surgery.[2] This single failure to inform is a violation of the physician's duty of disclosure. If the remaining elements are satisfied such violation gives rise to liability for the results of the treatment.

As to the causation element, i.e., that the patient would not have consented if informed adequately, Ms. Smith testified unequivocally that had she been told of the alternative of hormonal therapy, she would not have consented to the surgery. Physician argues that the trial court properly determined that reasonable minds could not differ that the plaintiff would have consented even if adequately informed. This

conclusion flies directly in the face of the evidence. In effect, it is argued that, in ruling on a demurrer to the evidence, the trial court was entitled to disregard admittedly self-serving testimony of the patient, since other evidence indicated that she had been informed of far greater risks in the past than for this surgery, and still consented. In essence, we are urged to abandon the subjective test adopted in *Scott v. Bradford*, supra. We decline to do so.

■ In adopting that test, we noted that if the patient testified he would not have consented to the treatment if adequately informed, "... then the causation problem must be resolved by examining the credibility of plaintiff's testimony. The jury must be instructed that it must find plaintiff would have refused the treatment if he is to prevail." It is not the province of the appellate or trial court to pass upon the credibility of witnesses in cases tried to a jury. There was sufficient evidence on the second element of the informed consent theory.

Finally, physician argues that there was no medical evidence that the present physical complaints of the plaintiff were caused by the hysterectomy or the bladder injury. Therefore, it is argued, there is no evidence that any damage occurred as a result of the treatment. There is no question but that the surgery took place, the bladder was injured, and Ms. Smith incurred medical costs as a result of the defectively authorized surgery, in addition to costs resulting only from the bladder repair.

■ In cases such as this, where liability is premised upon the physician's failure to inform of non-surgical alternatives, one of the elements of damage is the injury and expense caused by the surgery itself, including any complications which may arise, whether resulting from defective treatment or not, and without regard to whether the

---

**2.** Physician indicated in Smith's chart after her initial exam that the treatment approach should be: "1) Diagnostic D & C. 2) Consider hormonal therapy in the future. 3) Have discussed possibility of Hysterectomy with the patient in the future."

In addition she testified at trial that Smith's condition could be possibly treated by hormonal therapy, and that the hysterectomy was not an "absolute" necessity, medically.

complication was a risk required to be disclosed. This is so because the patient is required to establish that the surgery would not have been performed if the alternatives had been disclosed. As noted in *Scott v. Bradford,* supra, page 557, "If a physician breaches this duty, patient's consent is defective, *and physician is responsible for the consequences.*" (Emphasis added). Viewing the evidence in the light most favorable to the patient, as we are required to do in determining the demurrer to the evidence, we must conclude that the evidence establish a prima facie case of liability under "informed consent," based upon the failure to disclose alternative treatments.

### III.

Ms. Smith also contends that there is liability under "informed consent" because the physician did not advise her of the risk of the bladder injury. Although the physician testified that she believed she informed Ms. Smith of the risk to the bladder, she also argues that the risk was not "material" and, therefore, need not be disclosed under *Scott v. Bradford,* supra.

 We need not determine whether the bladder risk, which was stated to be less than one per cent, was a material risk, because, as to this basis for recovery under informed consent, Ms. Smith did not establish a prima facie case. As noted above, one of the elements of an "informed consent" case is that the patient show that there would have been no consent had they been informed of the attendant risks, in addition to any alternatives. Ms. Smith testified that she would have consented to the surgery even if told of the bladder risk:

> "If she'd [Dr. Reisig] have told me that there was a risk in cutting the bladder and that was the only chance I had keeping from, you know, the malignant cells spreading, or whatever, I would have took that chance."

While this willingness on her part does not vitiate her right to recovery on the basis of the failure to disclose alternative treatments, it would prevent recovery for failure to disclose the bladder injury alone. The trial court did not err in sustaining the demurrer insofar as it related to Ms. Smith's allegations that the physician's failure to disclose the risk of bladder injury gave rise to liability under "informed consent."

### CONCLUSION

 Where the evidence presented, with all inferences reasonably drawn therefrom, and disregarding all conflicting evidences favorable to the defendant, establishes any right to recovery by the plaintiff, a demurrer to the evidence should be overruled. *Condo v. Beal,* 424 P.2d 48 (Okla. 1967). Applying that test to this case, we must conclude that Ms. Smith did establish a prima facie case under the theory of the physician's failure to disclose to her an alternative treatment by hormonal therapy which gave rise to liability under "informed consent." The trial court erred in sustaining the defendant's demurrer.

**REVERSED AND REMANDED FOR NEW TRIAL.**

BARNES, C.J., and HODGES, LAVENDER, HARGRAVE, OPALA, JJ., concur.

SIMMS, V.C.J., concurs in parts I & II; concurs in part III by reason of stare decisis.

DOOLIN, J., dissents in part I; concurs in parts II & III.

ALMA WILSON, J., concurs in part, dissents in part.

KAUGER, J., dissents in part I; concurs in parts II & III.

DOOLIN, Justice, dissenting:

I take issue with that portion of the majority opinion designated under I.

The defendant/physician in this case stated that her injury to the plaintiff's bladder was "inadvertent." Such a statement is classified at law as extra-judicial in nature. Such a statement usually satisfies the requirement of producing expert medi-

cal testimony as proof of a malpractice matter, *Greenwood v. Harris*, supra.

Merriam-Webster's Third New International Dictionary (unabridged) defines inadvertent: (1) Not turning the mind to a matter; (2) Heedless, Negligence, Inattentive.

The issue was presented when the trial court sustained defendant's demurrer to plaintiff's evidence and entered judgment for the defendant. I feel that such action was in error. The trial court's ruling accepted the *unintentional* nature of the defendant's act.

The proper and correct interpretation, on the subject, required the court to resolve all doubt in favor of the plaintiff and all inferences to be drawn from the use of the word inadvertent should also have been resolved in favor of plaintiff. In any event, the use of the word inadvertent by the defendant and its meaning was a question of fact to be determined by the jury. *Carter Oil Co. v. Johnston*, 208 Okl. 564, 257 P.2d 817 (1953).

I am authorized to state that KAUGER, J. joins in this dissent.