## Zolk v. Simon

534

*Gustine J. Pelagatti,* for plaintiffs.
*Charles B. Burr II,* for defendant.

MOSS, *J.,* April 16, 1987 — Plaintiffs filed a complaint in trespass alleging, inter alia, defendant, physician performed medical malpractice upon him and therefore breached a duty owed. Prior to trial, the Hon. Stanley Greenberg and the Hon. Louis Hill issued discovery orders precluding plaintiffs from introducing any expert medical testimony at trial. Such orders were clarified by the Hon. Thomas White.

Testimony commenced before this court and a jury. At trial, pursuant to Judge White's order, plaintiffs were precluded from presenting expert testimony to support their allegations of defendant's negligence. Subsequent to plaintiffs' case in chief, this court granted defendant's motion for non-suit/directed verdict. Thereafter, plaintiffs filed a timely motion for new trial to which defendant responded.

Plaintiffs in their post-trial motions allege:

(1) The learned trial judge erred in granting defendant's motion for non-suit in that the weight of the evidence precluded a non-suit.

(2) There was sufficient evidence of record to create a question of fact for the jury so that the learned trial judge erred in granting a non-suit.

(3) The trial judge misapplied the law of res ipsa loquitur to the facts of the present case.

(4) The trial judge erred in ruling defendant's admission did not create sufficient facts to present the issue of negligence to the jury.

(5) The trial judge erred in confusing expert testimony with fact testimony in limiting plaintiff's cross-examination of defendant-physician.

(6) The trial judge erred in rulings of law which will be more particularly described upon receipt of the notes of testimony.

This court hereby denies such motions.

Trial testimony on December 8, 1986, established Mr. Zolk suffered an injury during the course of his employment in April 1978, which resulted in pain to his neck and left arm. After two years of conservative treatment Mr. Zolk elected an anterior cervical discectomy and fusion to correct a bulging disc located between the fifth and sixth bone in his neck. Defendant and his assistant, Dr. Wisneski, a resident in surgery, performed this procedure on April 8, 1980, after informing Mr. Zolk of the risks involved and possible alternatives. Post-operatively, plaintiff developed left-sided Horner's Syndrome.

Mr. Zolk testified when he awoke post-operatively he couldn't control the eyelid over his left eye. The next day he claimed he was told by defendant doctor the condition would heal in seven days. However, upon discharge his eye had not yet healed. At a subsequent office visit, he again complained his eye had still not healed. During a third visit, defendant allegedly informed Mr. Zolk that "he made a mistake when he damaged the nerve and he's going to send me to an eye doctor."

Hereafter, the five original issues presented will be consolidated into two issues, pursuant to plaintiffs' brief in support of said motion for new trial.

Plaintiff contends this court erred in refusing to apply the doctrine of res ipsa loquitur and in confusing expert testimony with fact testimony. For plaintiffs to meet the burden of proof required in medical malpractice actions involving physicians negligence, they must prove defendant failed to exercise the same care as that which is usually exercised in the medical profession. *Ragan v. Steen,* 229 Pa. Su-

per. 515, 331 A.2d 724 (1974). Therefore, to prove negligence in a medical malpractice action plaintiff must introduce expert testimony. *Brannan v. Lankenau Hospital,* 490 Pa. 588, 417 A.2d 196 (1980). However, under the doctrine of res ipsa loquitur an inference of negligence may be drawn when "the event is of a kind which ordinarily does not occur in the absence of negligence." Restatement (Second) of Torts §328(d)(i)(a).

In the instant case, plaintiffs were precluded from presenting any expert trial testimony pursuant to the Honorables Greenberg, Hill and White's pretrial orders. However, plaintiffs claim such testimony was unnecessary since the doctrine of res ipsa loquitur applies. In support of this contention plaintiffs rely upon *Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 437 A.2d 1134 (1981). Such reliance is misplaced. In *Jones,* supra, the court stated there were two avenues by which plaintiff could establish liability without expert testimony: "[o]ne being the reliance upon common lay knowledge that the event would not have occurred without negligence, and the second, the reliance upon medical knowledge that the event would not have occurred without negligence." Id. at 473, 437 A.2d at 1138. Therefore, the doctrine of res ipsa loquitur may also be applied if expert testimony is introduced to establish the event would not ordinarily occur absent negligence. In *Jones,* supra, plaintiff presented expert testimony to establish suprascapular nerve palsy does not ordinarily occur following gynecological surgery in the absence of negligence. In the case at hand, plaintiffs did not present any evidence to establish that in the absence of negligence Horner's Syndrome would not have developed. Furthermore, defendant doctor testified there were multiple etiologies for Horner's Syndrome and that said

syndrome could have occurred absent negligence.

Dr. Simon specifically stated:

"All right. . . . A Horner's Syndrome defined is an involvement of the sympathetic nerve chain to the extent that the nerve impulses don't go over that nerve chain well enough to the end organs of that nerve chain, and what that affects is the size of the pupil, the ability to hold the lid up without it lagging a bit — that's called ptosis, or dropping of the eyelid — and the decrease in the sweating on the side of the face. That combination is called a Horner's Syndrome.

By Mr. Pelagatti:

Q. Doctor, just one for me. If I were a layman and you said it involved the nervous system, can you think of another word other than "involve" to clarify?

A. No. I didn't say it involves the nervous system. I said it involves the sympathetic nervous chain in this case.

Q. In terms laymen can understand, can you choose a word other than "involve"?

A. Affects.

Q. How about "damage"?

A. It doesn't have to be "damage," sir, other than if you interpret "damage" as a dysfunction of the nerve. In other words, if you consider that a disease, for example, is damaged, then in that respect you could say "damage."

Q. We're not talking about a disease; we're talking about an operation.

A. No, sir, we're talking about Horner's Syndrome. You asked me to explain to the jury the etiology. One of the etiologies is disease of the nerve.

Q. Is another etiology damage to the nerve?

A. Yes.

Q. Is another etiology pressure on the nerve?

A. There are multiple etiologies. Presumably pressure can be one of them.

In *Gallegor v. Felder*, 329 Pa. Super. 204, 478 A.2d 34 (1984), the court stated:

"There was a complete absence of evidence to show that the harm which befell [plaintiff] would not have occurred in the absence of medical malpractice, and the nature of the harm suffered in this case cannot be held to be so simple and obvious that a conclusion of negligence could reasonably or properly be reached by *a layperson based upon ordinary experience and comprehension.* This is simply not the equivalent of a situation in which a surgical tool is negligently left inside a person after an operation." Id. at 210, 478 A.2d at 37.

Applying said principles to the case at bar, this court concludes the doctrine of res ipsa loquitur is inapplicable. First, there was competent factual testimony from Dr. Simon that Horner's Syndrome can occur absent negligence and there was no such expert testimony to the contrary. Second, it is well beyond a layperson's fund of common knowledge to conclude Horner's Syndrome would not occur absent negligent performance of a cervical discectomy. Accordingly, it is abundantly clear the jury could not rely upon "common lay knowledge." Thus, the court properly rejected plaintiff's res ipsa loquitur argument.

Concerning plaintiff's allegations regarding fact and expert testimony, this court must interpret the orders of Judges Greenberg, Hill and White strictly and their preclusive instructions make it very clear that plaintiff could not present expert testimony from defendant or anyone else.

Plaintiffs next contend that this court erred in concluding defendants' extra-judicial admissions were insufficient to establish negligence. Plaintiff testified, defendant physician stated "he made a mistake when he damaged the nerve and he's going to send me to an eye doctor. . . ." Defendant denied making such a statement. However, this court in determining whether to grant a non-suit, must view the evidence in a light most favorable to plaintiffs. Therefore, for purposes of such motion, this court must conclude said statement was made. Although this issue is one of first impression in Pennsylvania, other jurisdictions have already set guidelines for determining whether a specific extra-judicial admission will qualify to establish negligence. While this court holds, an extra-judicial statement may be sufficient, it also holds that the instant admission was insufficient to establish negligence without expert testimony. Therefore, a non-suit was properly entered.

In *Smith v. Karen S. Reisig*, 686 P.2d 285 (Okl. 1984), defendant stated in the medical records that the injury to plaintiff's bladder sustained during a hysterectomy was "inadvertent." No third-party expert testimony concerning defendant's failure to meet the applicable standard of care was introduced. The court held, for an extra-judicial statement to establish negligence without expert testimony, such admission must *"refer to some act of the physician which should not have been taken or an act not done which should have been.* In this instance, the admission refers not to some act on the part of the physician but to the result." Id. at 287. In the instant case, defendant's statement that "he made a mistake" referred to the result and not his actions. Therefore, such admission did not establish

negligence by any stretch of the imagination.

Furthermore, in *Senesac v. Associates in Obstetrics and Gynecology,* 141 Vt. 310, 449 A.2d 900 (1982), plaintiff underwent a therapeutic abortion. During the course of the operation plaintiff's uterus was perforated, necessitating an emergency hysterectomy. Plaintiff alleged shortly after the operation defendant admitted she made a mistake.

The court held:

"The asserted statement of [defendant] that she made a mistake, that she was sorry, and that it had never happened before does not establish a departure from the standard of care ordinarily exercised by a reasonably skillful [doctor]. The fact that the physician may have believed, and, if so, verbalized the belief that her performance was not in accordance with her own personal standards of care or skill, is not sufficient in the absence of expert evidence showing a departure from the standards of care or skill ordinarily exercised by physicians on similar cases." Id. at 903.

Moreover, in *Greenwood v. Harris,* 362 P.2d 85 (Okla., 1961), and *Robertson v. La Croix,* 534 P.2d 17 (Okla. app. 1975), the Oklahoma courts specifically stated the type of extra-judicial statement that would qualify as an admission and the court in *Senesac, supra,* relied heavily upon those aforementioned cases.

It stated:

"In *Greenwood v. Harris,* supra, the physician had recommended and performed surgery on the plaintiff for a tumor, despite clinical indications of pregnancy. The physician stated that he "should have made more tests," and that "this is a terrible thing that I have done, I wasn't satisfied with the

lab report, she did have signs of being pregnant. I should have had tests run again, I should have made some other tests." Finally, in *Robertson v. La Croix*, 534 P.2d 17 (Okla. App. 1975), the court of appeals determined that there was sufficient evidence to withstand demurrer where there was competent expert testimony as to how a vaginal fistula could occur during a hysterectomy and other evidence which eliminated all causes other than negligence. The court ruled that evidence combined with an admission by the physician that he "just made a mistake and got over too far," was sufficient to withstand demurrer.

In the instant case, there was no expert testimony establishing defendant performed some act which should not have been performed or failed to perform an act which should have been performed. Moreover, there was not one shred of evidence defendant departed from the standard of care ordinarily exercised by the average, reasonably skillful orthopedic specialist. Accordingly, this court did not err in granting defendant's motion for a directed verdict.

For the aforementioned reasons, plaintiff's motion for a new trial is hereby denied.